1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DANE R. GILLETTE
Chief Assistant Attorney General
3 | JULIE L. GARLAND
Senior Assistant Attorney General
4 | ANYA M. BINSACCA
Supervising Deputy Attorney General
5 | PATRICIA WEBBER HEIM, State Bar No. 230889
Deputy Attorney General
6 |  455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
7 |  Telephone:  (415) 703-5603
Fax:  (415) 703-5843
8 |  Email:  Patricia.Heim@doj.ca.gov

9 | Attorneys for Respondent

10

11 | IN THE UNITED STATES DISTRICT COURT

12 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

13 | SAN FRANCISCO DIVISION

14

15 | **EUGENE ALVIN REAMS,**

16 | Petitioner,

17 | v.

18 | **A. P. KANE, et al.,**

19 | Respondent.

C 07-3610 WHA (PR)

Judge:     The Honorable
William Alsup

20

21

22 | **ANSWER TO ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND**

23 | **AUTHORITIES**

24

25

26

27

28

1

**TABLE OF CONTENTS**

2                                                                                          **Page**

3   INTRODUCTION                                                                              1

4   ANSWER TO ORDER TO SHOW CAUSE                                                             2

5   MEMORANDUM OF POINTS AND AUTHORITIES                                                     11

6   ARGUMENT                                                                                 11

7   I.      THE STATE COURTS' DENIAL OF REAMS'S HABEAS PETITION WAS
            NEITHER CONTRARY TO OR AN UNREASONABLE APPLICATION OF
8           CLEARLY ESTABLISHED FEDERAL LAW, NOR BASED ON AN
            UNREASONABLE DETERMINATION OF THE FACTS.                                          11

9
            A.    The State Court Decision Was Not Contrary to or an Unreasonable
10                Application of Clearly Established Federal Law.                             12

11                1.    Reams Received All Process Due Under the Only United
                        States Supreme Court Law Addressing Due Process in the
12                      Parole Context.                                                       12

13                2.    The Ninth Circuit's Some-Evidence Test Is Not Clearly
                        Established Federal Law.                                              13

14
                  3.    Even if the Some-Evidence Standard Applies, Reams's
15                      Petition Must Be Denied Because the State Court
                        Reasonably Applied It In Upholding the Board's Decision
16                      Denying Reams Parole.                                                 16

17                4.    The Board May Rely on Unchanging Factors to Deny
                        Reams Parole.                                                         17

18
    II.     THE BOARD DID NOT INCREASE REAMS'S PUNISHMENT.                                    19
19
    III.    REAMS FAILS TO RAISE A CLAIM THAT IS COGNIZABLE IN
20          FEDERAL HABEAS WITH RESPECT TO HIS CLAIM THAT HE DOES
            NOT PRESENT A CURRENT DANGER TO SOCIETY.                                          20

21
    CONCLUSION                                                                                21
22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2                                                                              **Page**

3  **Cases**

4  *Apprendi v. New Jersey*
   530 U.S. 466 (2000)                                                          19
5
   *Baja v. Ducharme*
6  187 F.3d 1075 (9th Cir. 1999)                                                10

7  *Bd. of Pardons v. Allen*
   482 U.S. 369 (1987)                                                           9
8
   *Benny v. U.S. Parole Comm.*
9  295 F.3d 977 (9th Cir. 2002)                                                 10

10 *Biggs v. Terhune*
   334 F.3d 910 (9th Cir. 2003)                                              18, 20
11
   *Blakely v. Washington*
12 542 U.S. 296 (2004)                                                          19

13 *Carey v. Musladin*
        U.S.___,
14 127 S. Ct. 649 (2006)                                                13-15, 18, 20

15 *Crater v. Galaza*
   491 F.3d 1119 (9th Cir. 2007)                                            14, 20
16
   *Estelle v. McGuire*
17 502 U.S. 62 (1991                                                            20

18 *Foote v. Del Papa*
   492 F.3d 1026 (9th Cir. 2007)                                                14
19
   *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*
20 442 U.S. 1 (1979)                                                   9, 11-13, 15

21 *In re Dannenberg*
   34 Cal. 4th 1061 (2005)                                                   9, 18
22
   *In re Rosenkrantz*
23 29 Cal. 4th 616 (2002)                                                10, 17, 19

24 *Irons v. Carey*
   ___ F.3d ___, 2007 WL 2027359 (9th Cir. July 13, 2007)                       18
25
   *Jancsek v. Oregon Board of Parole*
26 833 F.2d 1289 (9th Cir. 1987)                                                13

27 *Juan H. v. Allen*
   408 F.3d 1262 (9th Cir. 2005)                                                17
28

# TABLE OF AUTHORITIES (continued)

**Page**

**Cases cont.**

*Lockyer v. Andrade*
538 U.S. 63 (2003) — 11, 16

*Nguyen v. Garcia*
477 F.3d 716, (9th Cir. 2007) — 14

*Powell v. Gomez*
33 F.3d 39 (9th Cir. 1994) — 16

*Rompilla v. Beard*
545 U.S. 374 (2005) — 14

*Sandin v. Connor*
515 U.S. 472 (1995) — 9

*Sass v. California Bd. of Prison Terms*
461 F.3d 1123 (9th Cir. 2006) — 9, 16, 18

*Schriro v. Landrigan*
___U.S.___,
127 S. Ct. 1933 (2007) — 14, 15, 18, 20

*Superintendent v. Hill*
472 U.S. 445 (1985) — 13, 16, 17

*Toussaint v. McCarthy*
801 F.2d 1080 (9th Cir. 1986) — 16

*Wainwright v. Greenfield*, 474 U.S. 284 (1986) — 14

*Wiggins v. Reams*
539 U.S. 510 (2003) — 14

*Wilkinson v. Austin*, 545 U.S. 209, 229 (2005) — 15

*Wolff v. McDonnell*
418 U.S. 539 (1974) — 15

*Woodford v. Visciotti*
537 U.S. 19 (2002) — 16

*Ylst v. Nunnemaker*,
501 U.S. 797 (1991) — 12

**Constitutional Provisions**

Sixth Amendment — 14, 19

## TABLE OF AUTHORITIES  (continued)

Page

**Statutes**

28 United States Code

| | |
|---|---|
| § 2244(d)(1) | 10 |
| § 2254(a) | 20 |
| § 2254(d) | 16 |
| § 2254(d)(1) | 15, 20 |
| § 2254(d)(1-2) | 11 |
| § 2254(d)(2) | 17 |
| § 2254(e)(1) | 17 |
| § 2254, Rule 2(a) | 2, 9 |

California Penal Code

| | |
|---|---|
| § 3041 | 9, 18, 20 |
| § 3041(b) | 9 |

**Other Authorities**

| | |
|---|---|
| Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) | 8, 11-13, 16-18, 21 |

California Code of Regulations, Title 15

| | |
|---|---|
| § 2402(b) | 19 |

1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DANE R. GILLETTE
Chief Assistant Attorney General
3 | JULIE L. GARLAND
Senior Assistant Attorney General
4 | ANYA M. BINSACCA
Supervising Deputy Attorney General
5 | PATRICIA WEBBER HEIM, State Bar No. 230889
Deputy Attorney General
6 | 455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
7 | Telephone: (415) 703-5603
Fax: (415) 703-5843
8 | Email: Patricia.Heim@doj.ca.gov

9 | Attorneys for Respondent

10

11 | IN THE UNITED STATES DISTRICT COURT

12 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

13 | SAN FRANCISCO DIVISION

14

15 | **EUGENE ALVIN REAMS,**

16 | Petitioner,

17 | v.

18 | **A. P. KANE, et al.,**

19 | Respondent.

C 07-3610 WHA (PR)

**ANSWER TO ORDER TO SHOW CAUSE;
MEMORANDUM OF POINTS AND AUTHORITIES**

Judge:       The Honorable
             William Alsup

20

21 | **<u>INTRODUCTION</u>**

22 | Petitioner Eugene Reams is a California state inmate at the Correctional Training Facility,

23 | proceeding pro se in this habeas corpus action. Petitioner, who is currently serving an

24 | indeterminate life term for kidnap for robbery, alleges that the Board of Parole Hearings

25 | unconstitutionally denied him parole at his 2005 parole consideration hearing. Reams alleges

26 | that his due process rights were violated because there was no evidence to support the Board's

27 | denial and no evidence that he was a current threat to public safety. On July 23, 2007, this Court

28 | issued an Order to Show Cause.

Answer to Order to Show Cause; Memorandum of Points and Authorities

*Reams v. Kane*
C 07-3610 WHA (PR)

1    In a large portion of his petition Reams re-characterizes the facts of his crime, and his

2    behavior before the commitment offense and while incarcerated, to contradict the Board's

3    finding of unsuitability, thereby inviting the Court to re-weigh the evidence that the Board

4    considered at the 2005 parole consideration hearing.  Such a re-weighing is not the Court's role

5    because even if the some-evidence standard applies, this Court's review is limited solely to

6    determining whether the Board's decision was supported by some evidence.  Respondent Acting

7    Warden Ben Curry answers as follows[1]:

8    ## ANSWER TO ORDER TO SHOW CAUSE

9    In response to the petition for writ of habeas corpus filed in this Court on July 12, 2007,

10   Respondent hereby admits, denies, and alleges the following:

11   1.    Reams is lawfully in the custody of the California Department of Corrections

12   and Rehabilitation following his April 18, 1984 conviction for kidnap for robbery.  (Ex. 1 –

13   Judgment.)  Reams is currently serving an indeterminate life sentence of seven years to life, plus

14   ten years.  (*Id.*; Ex. 2 at 1 – Hearing Transcript.)  Reams does not challenge his underlying

15   conviction in the current proceeding.  (Order to Show Cause at 1.)

16   2.    Respondent affirmatively alleges that during the month of November 1983,

17   Reams was involved in numerous robbery attempts.  (Ex. 3 at 5-9 – Probation Officer's Report.)

18   On November 5, 1983, Reams stole a Porsche during a test-drive with the owner, where he posed

19   as a potential buyer; the next day he called the seller and told him the car was in the parking lot

20   of the Hotel del Coronado.  (Ex. 3 at 5.)  On November 18, 1983, Reams and a co-conspirator

21   stole another Porsche during a test-drive, using the same tactic of asking to drive the car and then

22   locking the seller out of the vehicle before driving away.  (*Id.*)

23   In the early morning the next day, November 19, 1983, someone posing as an ADT

24   security employee called the ADT Security Office to report suspicious activity at a research

25

26   1.  A proper habeas respondent is the person having custody of the petitioner, such as the
warden.  Rule 2(a), 28 U.S.C. § 2254.  Therefore, this Answer is filed on behalf of Respondent

27   Acting Warden Ben Curry.  However, because the petition challenges a parole consideration hearing,
the Board is used interchangeably with Respondent in this Answer and the supporting Memorandum

28   of Points and Authorities.

Answer to Order to Show Cause; Memorandum of Points and Authorities                    *Reams v. Kane*
C 07-3610 WHA (PR)

2

1    building. (*Id.*) Police later responded to the building to investigate an attempted burglary

2    because the building alarm had been set off by a boulder thrown through the glass door, another

3    window had been kicked out, and tire tracks lead from the parking lot to the front door. (*Id.*)

4    Two ADT security officers also responded and remained at the site because of the broken

5    windows. (*Id.*) One of the security officers, Agent Nixon, went to his office to request

6    replacement security officers before returning to the burglary site. (*Id.* at 5-6.) About ten

7    minutes after returning to the burglary site, Reams and his co-conspirators drove up to the

8    business in a yellow Porsche. (*Id.* at 6.) Reams got out, pointed a gun at Nixon while another

9    co-conspirator pointed a loaded shotgun; they ordered Nixon to turn around and raise his hands.

10    (*Id.*) Reams and his co-conspirator took Nixon's gun from its holster, handcuffed him, and

11    ordered him to lie face-down on the ground. (*Id.*) Reams and his co-conspirators then ordered

12    Nixon into the backseat of his security car and drove him to another building patrolled by ADT

13    security. (*Id.*) Nixon heard the conspirators going through the keys in the trunk of his car before

14    driving away, and also heard the Porsche following behind his car as they drove. (*Id.*) Before

15    they drove away, Reams and his co-conspirators gagged Nixon with a sock, handcuffed him to a

16    set of gas meters, and told him he would be released in about three hours. (*Id.*) Reams uncuffed

17    himself with a spare key in his pocket, went for help, and later identified Reams as a former ADT

18    security guard and provided a description of the co-defendant (Taylor), who pointed the shotgun

19    at him. (*Id.* at 6-7.)

20          Later that same day, police responded to a robbery and auto theft at a car dealership

21    where Reams and Taylor asked to test drive a Chevrolet van. (Ex. 3 at 7.) Reams and Taylor got

22    into the van with the victim driving, but later Taylor asked if he could drive. (*Id.*) While

23    switching seats, the victim saw a Porsche drive up and stop behind the van. (*Id.*) Taylor pointed

24    a gun at him and ordered him to lie down, and Reams ordered the victim to lie flat and give

25    Reams his cash and his diamond ring, valued at $1,800. (*Id.*) Reams and Taylor also took a

26    pager the victim's employer gave him because he was suspicious of Reams and Taylor and threw

27    it out of the van. (*Id.*) Reams and Taylor drove around, got gas, and eventually let the victim out

28    in the center divider of Interstate 5; the victim again saw the same Porsche sitting in front of the

Answer to Order to Show Cause; Memorandum of Points and Authorities           *Reams v. Kane*
C 07-3610 WHA (PR)

1   van. (*Id.*)

2       During the next two days, Reams and his co-conspirators again tried to steal the same

3   Porsche they tried to steal on November 5, but the family members confronted them, and they

4   fled. (Ex. 3 at 7-8.) The next day, November 21, 1983, Reams and his co-conspirators broke

5   into a Neiman Marcus department store. (*Id.* at 8.) Reams and his co-conspirators pointed guns

6   at numerous employees, tied them with tape, and blindfolded them. Reams and his co-

7   conspirators took cash, jewelry, and wallets from the employees, cash from numerous concealed

8   cash registers throughout the store, and five fur-lined jackets valued at between $2,000 and

9   $3,000 each. (*Id.* at 9.)

10       Preceding the above-charged offenses, Reams had been involved in other numerous

11   vehicle thefts, from May 1983 through November 1983. (Ex. 3 at 10-13.) Reams stole a

12   Volkswagon van and numerous Datsuns, which were found with engines and other parts stripped.

13   (*Id.*) After his arrest, Reams told police that the initial string of robberies began because he and

14   his co-conspirators wanted the stereo and speakers out of the Volkswagon van and thought the

15   owner hid money inside it. (*Id.* at 14.) Reams stole the Datsun "Z" cars in order to replace parts

16   in his own car and one of his co-conspirators because he wanted to keep his "own vehicle

17   running." (*Id.* at 14-15.) Reams said he asked potential victims if they had insurance so they

18   would not "personally take the loss," and he did not steal one of the cars because the sellers wife

19   "was pregnant, so [he] decided not to take that vehicle." (*Id.* at 15.)

20       Reams told police that he had always wanted to be a police officer, graduated from high

21   school early at age sixteen and got a job with ADT security at nineteen, but became angry that he

22   could not be hired as a police officer until he was twenty-one. (Ex. 3 at 15.) Reams thought he

23   was more qualified than police officers already on the force and that this hiring policy was an

24   "arbitrary decision." (*Id.*) Reams did not make much money as a security guard, was kicked out

25   of his parents house, and moved in with one of his co-defendants in October 1983. (*Id.*) Reams

26   said initially he and his co-defendants wanted to rob a Brinks office to get a lot of cash and

27   needed a fast car to make their escape, which led to the Porsche robberies. (*Id.*) Reams said he

28   did not intend to kidnap Nixon and felt wrongly charged and convicted for kidnap; he only

1 | wanted Nixon's keys in order to get into the Brinks office and take money. (*Id.* at 13, 16.)

2 | Because the keys he took did not fit the locks at the Brinks office, Reams and his co-conspirators

3 | decided to rob the Neiman Marcus. (*Id.* at 16.)

4 |        3.     Respondent affirmatively alleges that before committing kidnap for robbery,

5 | Reams had a juvenile record of six vehicle code violations between June 1981 and August 1983;

6 | three violations were for speeding. (Ex. 2 at 17; Ex. 3 at 17.) Respondent alleges that Reams

7 | also claimed a misdemeanor conviction for carrying a concealed weapon at age sixteen in

8 | conjunction with his job as a security guard, although this charge was not substantiated by the

9 | record made for the Probation Officer's Report. (Ex. 2 at 17-18; Ex. 3 at 18.)

10 |        4.     Respondent affirmatively alleges that Reams's adult conviction record consists of

11 | all of the charges discussed above.

12 |        5.     Respondent affirmatively alleges that Reams's correctional counselor reported

13 | Reams had no disciplinary violations since 1997. (Ex. 2 at 30; Ex. 4 at 2 – Life Prisoner

14 | Evaluation Report 2004, 2003, 2002.)

15 |        6.     Respondent affirmatively alleges that Reams received a serious disciplinary

16 | violation in 1986 for conspiracy to escape, and a serious disciplinary violation in 1997 for

17 | gambling. (Ex. 2 at 40-42; Ex. 4 at 23.)

18 |        7.     Respondent affirmatively alleges that the psychological evaluator noted in a 2004

19 | evaluation that Reams's violence potential within a controlled setting was considered "well

20 | below average relative to this Level Two inmate population and if released to the community, his

21 | violence potential is estimated to be no greater than that of the average citizen in the

22 | community." (Ex. 2 at 45; Ex. 5 at 4 – 2004 Psychological Evaluation.)

23 |        8.     Respondent affirmatively alleges that a representative of the San Diego

24 | County District Attorney's Office appeared via video-conference at the 2005 hearing and

25 | opposed Reams's release on parole. (Ex. 2 at 67.)

26 |        9.     Respondent admits that the Board denied Reams parole on May 13, 2005.

27 | (Ex. 2.)

28 |        10.     Respondent admits that Reams filed a petition in San Diego County

1  Superior Court on February 15, 2006, generally alleging the same causes of action alleged here.

2  (Ex. 6 – Superior Court Petition.)  Respondent admits that the San Diego Superior Court denied

3  Reams's petition for writ of habeas corpus on April 5, 2006.  (Ex. 7 – Superior Court Order.)

4  After independently reviewing the record, and giving deference to the Board's broad discretion,

5  the superior court concluded that the record contained some evidence to support the Board's

6  denial of parole.  (Ex. 7 at 7.)  The superior court stated that the Board did not find Reams

7  unsuitable for parole based "solely on [his] commitment offense" as he alleged.  (*Id.* at 5.)

8  Rather, the superior court noted that in determining Reams's unsuitability, the Board considered

9  first considered the underlying commitment offense, which involved "a crime spree that resulted

10 in multiple car thefts, robberies, and assaults, totaling 27 counts and involving 19 victims."  (*Id.*)

11 The superior court found that "multiple victims were attacked, and that the offenses were

12 committed in an especially cruel and callous manner" because nineteen victims were attacked

13 and fourteen of them were bound and gagged.  (*Id.*)  The superior court also concluded that the

14 offense was carried out in a "dispassionate and calculated manner" because the crimes were pre-

15 planned, and "the motive for the crimes was very trivial in relation to the offenses" because they

16 were "committed strictly for material gains."  (*Id.*)

17       The superior court stated that the Board properly considered Reams's previous "minimal"

18 criminal record, his "stable social history," his minor prison disciplinary history which consisted

19 of only two serious disciplinary violations, his "steady" programming while incarcerated,

20 "supportive" psychological evaluation, positive parole plans, and family support.  (Ex. 7 at 5-6.)

21 However, the superior court noted that the Board also denied parole based on the San Diego

22 District Attorney's opposition to parole and Reams's resistance to thoroughly discussing all of

23 the crimes leading to his incarceration.  (*Id.* at 6.)  Thus, after independently reviewing the

24 record, giving deference to the broad discretion of the Board, the superior court concluded that

25 some evidence in the record supported the Board's parole denial.  (*Id.* at 7.)

26       11.    Respondent admits that Reams filed a petition in the California Court of Appeal

27

28

Answer to Order to Show Cause; Memorandum of Points and Authorities                    *Reams v. Kane*
                                                                                        C 07-3610 WHA (PR)

1    on September 7, 2006, generally alleging the same causes of action alleged here.[2/] (Ex. 8 – Cal.

2    Ct. App. Petition.)  Respondent further admits that on December 21, 2006, the California Court

3    of Appeal denied Reams's petition for writ of habeas corpus.  (Ex. 9 – Cal. Ct. App. Order.)  In

4    its order, the appellate court noted that Reams failed to state a prima facie case for relief, and the

5    court's inquiry was limited to determining whether some evidence in the record supported the

6    Board's denial.  (Ex. 9 at 2-3.)  The appellate court determined that the "circumstances of

7    [Reams's] commitment offense" exceeded "the minimum necessary to sustain his convictions

8    and he has not established that he has been held for a period grossly disproportionate to his

9    individual culpability." (*Id.* at 3.)  The appellate court noted the factors the Board considered,

10    including "the large number of crimes, the pre-planning involved in the crimes, the repeated use

11    of firearms to accomplish the crimes, and the large number of crime victims, some of whom were

12    intentionally lured into danger and/or were victimized more than once." (*Id.* at 1.)  The appellate

13    court also considered "the tactics used to intimidate and frighten the victims, including pointing

14    firearms at them, binding and gagging them, verbally threatening them, and leaving them

15    stranded in potentially precarious situations.  Moreover, the only discernable motives for the

16    crimes were monetary gain and thrill seeking." (*Id.*)

17          The appellate court stated that the Board considered that prior to the commitment offense,

18    Reams had "no significant criminal history," was "raised in a stable home, was a good student,

19    graduated from high school early," and finished "three semesters of college with the ultimate

20    goal of obtaining a degree in criminal justice." (Ex. 9 at 2.)  The appellate court also noted the

21    Board considered that other than two serious disciplinary violations, Reams's "prison

22    programming had been relatively good," he had "worked in various prison jobs, completed

23    vocational training, developed good computer skills, participated in self-help programs, and

24    volunteered for service projects." (*Id.*)  The appellate court indicated the Board considered that

25    the last psychological evaluation assessed Reams's "violence potential in prison" as "well below

26

27          2. Reams filed a motion for reconsideration in San Diego Superior Court on May 30, 2006,
      which was denied on June 7, 2006.  The motion and order allege no new facts or information
28    relevant to this Petition, but Respondent will provide these documents upon the court's request.

1  average and his violence potential if released would be no more than that of the average citizen,"

2  and found his parole plans were sufficient. (*Id.*)  However, the appellate court found that

3  although the Board told Reams since 1995 that it expected Reams to be found suitable for parole

4  "in the near future" if he continued to program as he had been, the Board in 2005 properly found

5  Reams unsuitable for parole because of his "unwillingness to cooperate with an in-depth

6  exploration of his crimes and their impact. According to the Board, such an exploration had not

7  been done to its satisfaction in the past and was necessary for the Board to be assured of Reams's

8  suitability." (*Id.*)  The appellate court also concluded that the Board's decision was not arbitrary

9  or capricious because it "candidly stated on the record that it attempted to probe the

10  circumstances of the commitment offense in detail," but that "Reams continually subverted the

11  Board's efforts, even though he had indicated a willingness to talk to the Board at the outset of

12  the hearing." (*Id.* at 3.)  The appellate court determined that "each hearing is separate and

13  distinct" and the court "could not fault the Board for being reluctant to find suitability when it

14  was prevented by Reams from getting the information it needed" to find him suitable. (*Id.*)

15      12.    Respondent admits that Reams filed a petition for review in the California

16  Supreme Court on January 4, 2007 generally alleging the same causes of action he alleges here.

17  (Ex. 10 – Cal. Sup Ct. Petition for Review.)  Respondent admits that the California Supreme

18  Court summarily denied the petition for review on March 14, 2007.  (Ex. 11 – Cal. Sup. Ct.

19  Docket.)  Respondent further admits that Reams thus exhausted his state court remedies in regard

20  to the claims alleged here stemming from his 2005 parole consideration hearing.  However,

21  Respondent denies that Reams exhausted his claims to the extent that they are more broadly

22  interpreted to encompass any systematic issues beyond this particular review of parole denial.

23      13.    Respondent denies that the state courts' denial of habeas corpus relief was

24  contrary to, or involved an unreasonable application of, clearly established United States

25  Supreme Court law, or that the denial was based on an unreasonable interpretation of facts in

26  light of the evidence presented.  Reams therefore fails to make a case for relief under the Anti-

27  Terrorism and Effective Death Penalty Act of 1996 (AEDPA).

28      14.    Respondent preserves the argument that Reams is not entitled to federal habeas

1    relief under 28 U.S.C. § 2254 because there is no clearly established federal law, as determined

2    by the United States Supreme Court, holding that California life inmates have a federally

3    protected liberty interest in parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442

4    U.S. 1 (1979); *Bd. of Pardons v. Allen*, 482 U.S. 369, 374 (1987); *In re Dannenberg*, 34 Cal. 4th

5    1061, 1087 (2005) (California parole scheme is a two-step process that does not impose a

6    mandatory duty to grant parole to life inmates before a finding of parole suitability); *Sandin v.*

7    *Connor*, 515 U.S. 472, 484 (1995); *contra Sass v. California Bd. of Prison Terms*, 461 F.3d

8    1123, 1125 (9th Cir. 2006).

9         15.    Respondent affirmatively alleges that Reams had an opportunity to present his

10    case to the Board, and that the Board provided him with a detailed explanation for its parole

11    denial. Thus, Reams received all process due under *Greenholtz*, the only clearly established

12    federal law regarding inmates' due process rights at parole consideration hearings.

13         16.    Respondent affirmatively alleges that the Board considered all relevant and

14    reliable evidence before it, and that its decision is supported by some evidence.

15         17.    Respondent denies that the Board relied only on the unchanging circumstances of

16    Reams's commitment offense to deny parole at the May 2005 parole consideration hearing.

17         18.    Respondent affirmatively alleges that the Board properly considered the gravity of

18    Reams's commitment offense as required under California Penal Code section 3041(b).

19         19.    Respondent denies that the Board was required to grant Reams parole under

20    California Penal Code section 3041 because the California Supreme Court has held that the

21    language of section 3041 regarding parole is not mandatory, there is no right to parole in

22    California, and the Board has extremely broad discretion and is not required to fix a parole date

23    until the inmate is found suitable for parole. *Dannenberg*, 34 Cal. 4th 1084-88, 1097-98. Under

24    *Dannenberg*, the Board properly found Reams unsuitable for parole without relying on the

25    matrices for kidnap for robbery because some evidence relating to the heinous nature of the crime

26    he committed resulted in his still being an unreasonable risk to public safety. In other words,

27    Reams's claim is without merit because the Board need not consider any relevant state law

28    sentencing matrix until Reams is found suitable for parole. *Id.*

Answer to Order to Show Cause; Memorandum of Points and Authorities                              *Reams v. Kane*
                                                                                          C 07-3610 WHA (PR)

1    20.    Respondent denies that the Board's 2005 denial of parole increased Reams's

2 punishment. Respondent also denies that the Board is requiring Reams to serve an excessive

3 term. Reams was sentenced to a life term (ex. 1), thus, he is not entitled to any term less than

4 life.

5    21.    Respondent admits that Reams's claim is timely under 28 U.S.C. §

6 2244(d)(1), and that the petition is not barred by non-retroactivity.

7    22.    If the Petition is granted, Reams's remedy is limited to a new parole consideration

8 hearing before the Board that comports with due process. *Benny v. U.S. Parole Comm.*, 295 F.3d

9 977, 984-85 (9th Cir. 2002) (the Board must exercise its discretion in determining whether or not

10 an inmate is suitable for parole); *In re Rosenkrantz*, 29 Cal. 4th 616, 658 (2002) (proper remedy

11 if Board decision lacks some evidence is a new hearing that comports with due process).

12    23.    Respondent submits that an evidentiary hearing is not necessary because the

13 claims can be resolved on the existing state court record. *Baja v. Ducharme*, 187 F.3d 1075,

14 1078 (9th Cir. 1999).

15    24.    Respondent affirmatively alleges that Reams fails to state or establish any

16 grounds for habeas corpus relief.

17    25.    Except as expressly admitted above, Respondent denies, generally and

18 specifically, each and every allegation in the petition, and specifically denies that Reams's

19 administrative, statutory or constitutional rights have been violated in any way.

20    Accordingly, Respondent respectfully requests that the Court deny the petition for writ of

21 habeas corpus, and dismiss these proceedings.

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

Answer to Order to Show Cause; Memorandum of Points and Authorities                    *Reams v. Kane*
                                                                                      C 07-3610 WHA (PR)

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## ARGUMENT

3

### I.

4
5
6

### THE STATE COURTS' DENIAL OF REAMS'S HABEAS PETITION WAS NEITHER CONTRARY TO OR AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW, NOR BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS.

7        Under AEDPA, a federal court may grant a writ of habeas corpus on a claim that a state

8    court already adjudicated on the merits only if the state court's adjudication was either: (1)

9    "contrary to, or involved an unreasonable application of, clearly established Federal law, as

10    determined by the Supreme Court of the United States;" or (2) "based on an unreasonable

11    determination of the facts in light of the evidence presented at the State Court proceeding." 28

12    U.S.C. § 2254(d)(1-2).

13        A state court decision is contrary to established federal law if "the state court applies a rule

14    that contradicts the governing law set forth in [United States Supreme Court] cases," or "the state

15    court confronts a set of facts that are materially indistinguishable from a decision of [the United

16    States Supreme] Court and nevertheless arrives at a result different from [the Court's]

17    precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (citations and internal quotation marks

18    omitted). A state court decision is an unreasonable application of clearly established law "if the

19    state court identifies the correct governing legal principle from [the United States Supreme

20    Court's] decision but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

21    at 75. It is not enough that the state court applied the law erroneously or incorrectly; rather, the

22    court must have made an objectively unreasonable application. *Id.* at 75-76.

23        The state court decisions denying Reams's claim for habeas relief are neither contrary to

24    or an unreasonable application of federal law, nor were they based on an unreasonable

25    determination of the facts in light of the evidence presented. First, Reams received all process

26    required under *Greenholtz*, the only clearly established federal law specifically addressing the

27    due process rights of inmates in a parole suitability decision. Second, the state court decisions

28    did not involve an unreasonable interpretation of the evidence; rather, the state court properly

Answer to Order to Show Cause; Memorandum of Points and Authorities

*Reams v. Kane*
C 07-3610 WHA (PR)

1    determined that some evidence supports the Board's decision. Thus, Reams fails to establish a

2    violation of AEDPA standards, and the state court decisions denying habeas relief must stand.

3         When, as here, the California Supreme Court denies a petition for review without

4    comment, the federal court will look to the last reasoned decision as the basis for the state court's

5    judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-804 (1991). In this case, the last reasoned

6    decision is the California Appellate Court's order denying Reams's habeas claim. (Ex. 9.) As

7    this decision is neither contrary to or an unreasonable application of federal law, nor based on an

8    unreasonable determination of the facts in light of the evidence presented, Reams fails to

9    establish a violation of AEDPA standards. His petition for writ of habeas corpus must be denied

10   accordingly.

11        **A.    The State Court Decision Was Not Contrary to or an Unreasonable
               Application of Clearly Established Federal Law.**

12

13        The first standard under AEDPA is that a state court habeas corpus decision must not be

14   contrary to, or an unreasonable interpretation of, clearly established federal law. Here, Reams

15   received all process due under *Greenholtz*, the only clearly established federal law regarding the

16   due process rights of inmates at a parole consideration hearing. Furthermore, federal law does

17   not preclude the Board from relying on the commitment offense or other static factors to deny

18   parole. As such, the state court decision denying relief must stand.

19        **1.    Reams Received All Process Due Under the Only United States
               Supreme Court Law Addressing Due Process in the Parole Context.**

20

21        In *Greenholtz*, the United States Supreme Court established the due process protections

22   required in a state parole system. The Court held that the only process due at a parole

23   consideration hearing is an opportunity for the inmate to present his case, and an explanation for

24   a parole denial. *Greenholtz*, 442 U.S. at 16. Reams's claim fails because he received both of

25   these protections at his 2005 hearing.

26        Reams appeared and presented his case to the Board, and the Board provided Reams with

27   a thorough parole consideration. (Ex. 2 at 4-5, 12-66, 68-70.) The Board addressed the

28   commitment offense, Reams's social history, minimal prior criminal history, minimal post-

1 | incarceration disciplinary history, parole plans, educational and vocational activity while

2 | incarcerated, and the psychological evaluations. (*Id.* at 13-66.)  After providing Reams the

3 | opportunity to present his case, the Board gave a detailed explanation for its parole denial. (*Id.* at

4 | 68-77.)

5 |      In summary, at his May 2005 parole consideration hearing, Reams received both an

6 | opportunity to present his case and an explanation as to why the Board denied him parole.

7 | Because he received all process due under *Greenholtz*, the state courts properly upheld the

8 | Board's decision, and the petition should be denied.

9 |        **2.     The Ninth Circuit's Some-Evidence Test Is Not Clearly Established Federal Law.**

10

11 |      Reams alleges that the Board's holding must be overturned because it is not

12 | supported by any evidence.  This argument stems from the holding in *Superintendent v. Hill*, 472

13 | U.S. 445, 455 (1985), in which the United States Supreme Court determined that some evidence

14 | must support the decision of a prison disciplinary board to revoke good time credits.  In *Jancsek*

15 | *v. Oregon Board of Parole*, 833 F.2d 1289, 1290 (9th Cir. 1987), the Ninth Circuit held that this

16 | standard applies not only in the disciplinary context, but the parole context as well, and that some

17 | evidence must support the Board's denials of parole.  Because the holding in *Jancsek* is not

18 | clearly established federal law under AEDPA standards, Respondent maintains that the some-

19 | evidence standard does not apply in federal habeas proceedings challenging parole denials.

20 |      As the Supreme Court recently made clear in *Carey v. Musladin*, ___U.S.___, 127 S. Ct.

21 | 649 (2006), where the Court has not applied a test or standard to a certain type of case it cannot

22 | be said that the failure of a state court to do so was an unreasonable application of clearly

23 | established federal law.  In *Musladin*, the petitioner challenged a state court decision finding that

24 | the fact that the victim's family wore buttons displaying the victim's image at the defendant trial

25 | was not inherently prejudicial.  *Id.* at 650.  The Ninth Circuit held that the state court decision

26 | was contrary to or an unreasonable application of federal law.  *Id.*  In reversing the Ninth Circuit,

27 | the Supreme Court noted that although it had articulated a test to determine whether state

28 | sponsored courtroom practices were inherently prejudicial, it had never addressed the issue of

1   whether conduct by a private party was so prejudicial that it deprived the defendant of his right to

2   a fair trial. *Id.* at 654. "Given the lack of holdings" on the specific issue, the Court reversed the

3   Ninth Circuit and held that the state court's decision was not an unreasonable application of

4   federal law. *Id.*

5        The Supreme Court has since reiterated its holding in *Musladin*, confirming that a state

6   court decision cannot be contrary to or an unreasonable application of federal law where the

7   Court has not addressed what protection or test is required in a specific factual or legal scenario.

8   In *Schriro v. Landrigan*, ___U.S.___, 127 S. Ct. 1933 (2007), the Ninth Circuit found that the

9   state court unreasonably applied *Wiggins v. Reams*, 539 U.S. 510 (2003) and *Rompilla v. Beard*,

10  545 U.S. 374, 381 (2005) when it denied federal habeas relief to a defendant asserting ineffective

11  assistance of counsel, despite the fact that he had refused to allow the presentation of any

12  mitigating evidence. *Landrigan*, 127 S. Ct. at 1942. The Supreme Court reversed that part of the

13  decision after distinguishing the facts of the case from those in *Wiggins* and *Rompilla*. *Wiggins*

14  did not address a situation in which the client had interfered with counsel's efforts to present

15  mitigating evidence. *Id.* And in *Rompilla*, the defendant had not informed the court that he did

16  not want mitigating evidence presented. *Id.* Because the high court had never addressed a

17  situation like the one raised in *Landrigan*, the state court's decision was not objectively

18  unreasonable. *Id.*

19        Several recent Ninth Circuit decisions also emphasize that there can be no clearly

20  established federal law where the Supreme Court has never addressed a particular issue or

21  applied a certain test to a specific type of proceeding. *Foote v. Del Papa*, 492 F.3d 1026, 1029

22  (9th Cir. 2007) (affirming district court's denial of petition alleging ineffective assistance of

23  appellate counsel based on an alleged conflict of interest because no Supreme Court case has

24  held that such an irreconcilable conflict violates the Sixth Amendment); *Nguyen v. Garcia*, 477

25  F.3d 716, 718, 727 (9th Cir. 2007) (holding that state court's decision finding *Wainwright v.*

26  *Greenfield*, 474 U.S. 284 (1986) did not apply to a state court competency hearing was not

27  contrary to clearly established federal law because Supreme Court had not held that *Wainwright*

28  applied to competency hearings); *Crater v. Galaza*, 491 F.3d 1119, 1123, 1126, n.8 (9th Cir.

1  2007) (citing *Musladin*, the Ninth Circuit acknowledged that decisions by courts other than the

2  Supreme Court are "non-dispositive" under § 2254(d)(1).)

3       Because the Supreme Court developed the some-evidence standard in the context of a

4  prison disciplinary hearing, which is fundamentally different from a parole proceeding,

5  application of this standard to a parole decision cannot be clearly established federal law.

6  *Musladin*, 127 S. Ct. at 654; *Landrigan*, 127 S. Ct. at 1942.  The level of due process protections

7  to which an inmate is entitled is directly related to the level of his liberty interest and the nature

8  of the decision being made.  *Greenholtz*, 442 U.S. at 13-14.  At a disciplinary hearing, the inquiry

9  is retrospective and factual in nature, and the prisoner faces a potential loss of credits.

10  *Greenholtz*, 442 U.S. at 14.  A decision to parole an inmate is fundamentally different.  First, the

11  level of liberty interest an inmate has in the possibility of parole is markedly different from that

12  of an inmate who is facing a loss of credits.  *Wolff v. McDonnell*, 418 U.S. 539, 560-561 (1974)

13  (contrasting the different interests that a parolee and a prisoner may have in their deprivation of

14  liberty); *Greenholtz*, 442 U.S. at 13-14 (distinguishing the parole suitability decision from the

15  parole revocation and disciplinary decisions).  Second, a parole decision is not factual in nature.

16  Rather, it is a predictive and subjective decision requiring discretionary analysis of the inmate's

17  suitability for release.  *Greenholtz*, 442 U.S. at 9-10; *Wilkinson v. Austin*, 545 U.S. 209, 229

18  (2005).  In fact, due to the discretionary nature of parole decisions, the Supreme Court has held

19  that, in contrast to prison disciplinary hearings, due process does not require the decision-maker

20  to specify the evidence showing that a prisoner is unsuitable for parole.  *Greenholtz*, 442 U.S. at

21  15.

22       Thus, application of the some-evidence standard to a parole proceeding is not clearly

23  established federal law.  Instead, the *only* clearly established Supreme Court authority describing

24  the process due when there is a federal liberty interest in parole simply requires that the inmate be

25  given an opportunity to be heard and advised of the reasons he was not found suitable for parole.

26  *Greenholtz*, 442 U.S. at 16.

27       Here, Reams does not contend that he failed to receive the protections outlined in

28  *Greenholtz*. (*See generally* Pet.)  Because Reams received all the process due under the only

Answer to Order to Show Cause; Memorandum of Points and Authorities                    *Reams v. Kane*
C 07-3610 WHA (PR)

1  United States Supreme Court law finding a federal liberty interest in discretionary parole release,

2  the state court decision was not contrary to or an unreasonable application of any United States

3  Supreme Court law. *See* 28 U.S.C. § 2254(d).

4          **3.**    **Even if the Some-Evidence Standard Applies, Reams's Petition Must**
                **Be Denied Because the State Court Reasonably Applied It In**

5                  **Upholding the Board's Decision Denying Reams Parole.**

6        Under the some-evidence standard, a decision cannot be "without support" or "arbitrary."

7  *Hill*, 472 U.S. at 457. The some-evidence standard is "minimally stringent," and a decision must

8  be upheld if there is any reliable evidence in the record that could support the conclusion reached

9  by the fact finder. *Powell v. Gomez*, 33 F.3d 39, 40 (9th Cir. 1994) (citing *Hill*, 472 U.S. at 455-

10  456); *see also Sass*, 461 F.3d at 1129 (stating that "*Hill's* some evidence standard is minimal.")

11  Determining whether this standard is satisfied does not require examination of the entire record,

12  independent assessment of the credibility of witnesses, or the weighing of the evidence.

13  *Toussaint v. McCarthy*, 801 F.2d 1080, 1105 (9th Cir. 1986). Indeed, in examining the record, a

14  court is not to make its own assessment of the credibility of witnesses or re-weigh the evidence.

15  *Hill*, 472 U.S. at 455. The question is whether there is *any* reliable evidence in the record that

16  could support the decision reached. *Toussaint*, 801 F.2d at 1105.

17        Here, the state court reasonably applied the some-evidence standard. (Ex. 9.) The state

18  court considered the facts and reasonably concluded that the some-evidence standard was met

19  because Reams's commitment offense, and most importantly, his unwillingness to cooperate

20  with the Board in engaging in an in-depth exploration of his crimes and their impact, supported

21  the Board's parole denial. (Ex. 9 at 1-3.) This court decision is entitled to deference under

22  AEDPA and may not be reversed unless it is contrary to, or involved an unreasonable application

23  of, clearly established federal law. *Andrade*, 538 U.S. at 75; *Woodford v. Visciotti*, 537 U.S. 19,

24  25 (2002). Reams has not shown that the state court decision was contrary to or involved an

25  unreasonable application of clearly established federal law. Instead, Reams disagrees with how

26  the evidence was weighed and evaluated by the Board and the state courts. (*See* Pet.) Neither

27  Reams, nor this Court, however, may re-weigh the evidence or assess the credibility of the

28  evidence presented to the Board. *Hill*, 472 U.S. at 455.

1    The state court properly upheld the Board's decision and found that there was some

2  evidence to support the Board's denial of parole suitability. (Ex. 9, citing *Rosenkrantz*, 29 Cal.

3  4th at 658, 683; *Dannenberg*, 34 Cal. 4th at 1095-1096.) The Board is required to make any

4  credibility determinations during parole hearings and it has done so. *Rosenkrantz*, 29 Cal. 4th at

5  677; (Ex. 2.) Further, the Board's determinations have been upheld by the state courts, and to the

6  extent that the some-evidence test in *Superintendent v. Hill* is clearly established, the state courts

7  reasonably applied it Reams's parole denial is supported by some evidence. Therefore, Reams's

8  Petition must be denied.

9    The second standard under AEDPA is that a state court habeas decision must be based on

10  a reasonable determination of the facts in light of the evidence presented. 28 U.S.C. §

11  2254(d)(2). AEDPA defers to state courts here, indicating that "a determination of a factual issue

12  made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Additionally,

13  Reams bears the burden of proving that the state court's factual determinations were objectively

14  unreasonable. 28 U.S.C. § 2254(e)(1); *Juan H. v. Allen*, 408 F.3d 1262, 1270 (9th Cir. 2005). In

15  his Petition Reams fails to prove that the state court's factual determinations were objectively

16  unreasonable.

17    Here, the state court properly denied Reams's petitions. The Board relied on the facts of

18  the crime set forth in the probation officer's report in determining that the crime was egregious.

19  (Ex. 2; Ex. 3 at 5-13; Ex. 4 at 11-19.) The Board also relied on the San Diego County District

20  Attorney's opposition to parole, and Reams's unwillingness to engage in an in-depth discussion

21  about the many crimes and their impact on the victims. (Ex. 2 at 71-77.)

22    The findings of the state court are both supported by the record and a reasonable

23  interpretation of the evidence presented. Reams failed to prove that the state court's factual

24  determinations were unreasonable. As such, the state court's denial of habeas relief meets the

25  standards of AEDPA, and there is no basis for this Court to overturn the decision. The petition

26  for writ of habeas corpus should be denied.

27        **4.    The Board May Rely on Unchanging Factors to Deny Reams Parole.**

28    Reams argues that due process precludes the Board from relying on the circumstances of

1   his commitment offense or other unchanging factors to deny parole. (Pet'r's P.&A. at 11, 15.)

2   This argument fails for a number of reasons.  First, and foremost, the fact that the Board's

3   decision was based in part on the nature of the commitment offense was not an unreasonable

4   application of federal law because the Supreme Court has never held that continued reliance on

5   an unchanging factor to deny parole violates due process.  *See Musladin*, 127 S. Ct. at 654;

6   *Landrigan*, 127 S. Ct. at 1942.  Second, California state law commands that the crime be the

7   primary consideration in the Board's determination of parole suitability.  Cal. Penal Code § 3041.

8   California Penal Code section 3041 requires that the Board examine the commitment offense, as

9   the Board "shall set a release date unless it determines that the gravity of the current convicted

10  offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is

11  such that consideration of the public safety requires a more lengthy period of incarceration."

12  Also, the California Supreme Court held in *Dannenberg* that the Board may rely solely on the

13  circumstances of the commitment offense.  34 Cal. 4th 1061, 1094 (2005).

14          While the Ninth Circuit has previously stated in dicta that at some point reliance on an

15  unchanging factor such as the commitment offense could possibly violate due process, the

16  Supreme Court has never addressed this issue.  *Biggs v. Terhune*, 334 F.3d 910, 916 (9th Cir.

17  2003).  In *Sass*, the Ninth Circuit emphasized that *Biggs* does not contain mandatory language,

18  and that "[u]nder AEDPA it is not our function to speculate about how future parole hearings

19  could proceed").  *Sass*, 461 F.3d at 1129.  The *Sass* court then rejected the argument that the

20  Board's reliance on "immutable behavioral evidence" to deny parole violated federal due

21  process.  *Id.*  The Ninth Circuit most recently addressed this issue in *Irons v. Carey*, ___ F.3d

22  ___, 2007 WL 2027359 (9th Cir. July 13, 2007).  In overturning a district court grant of habeas

23  corpus, the Ninth Circuit held that despite substantial evidence of the inmate-petitioner's

24  rehabilitation, the Board acted properly and did not abuse its discretion by relying on the

25  circumstances of the commitment offense to deny parole.  *Id.* at *5-6.  Thus, the dicta from

26  *Biggs* and its progeny do not preclude the Board from using circumstances the commitment

27  offense to deny parole, nor may this dicta be used to overturn a valid state court decision.

28          Accordingly, because Reams fails to prove that the state court decision denying parole

Answer to Order to Show Cause; Memorandum of Points and Authorities               *Reams v. Kane*
                                                                                  C 07-3610 WHA (PR)

1   and rejecting his claims regarding the Board's continued reliance on his crime is contrary to or an

2   unreasonable application of clearly established Supreme Court law, his federal petition must be

3   denied.

4                                                II.

5                          **THE BOARD DID NOT INCREASE REAMS'S**
                           **PUNISHMENT.**

6

7           Reams also alleges that the Board's parole denial improperly increased his punishment.

8   This argument is without merit because under California law, the Board must consider *all*

9   relevant and reliable factors regarding a prisoner's suitability for parole, not just those expressly

10  admitted or determined by a jury.  Cal. Code Regs. tit. 15, § 2402(b); *Rosenkrantz*, 29 Cal. 4th at

11  678-79.  Similarly, the United States Supreme Court has determined that only those factors

12  which increase the penalty for a crime beyond the statutory maximum need be proved beyond a

13  reasonable doubt.  *Apprendi v. New Jersey*, 530 U.S. 466, 530 (2000).  Because the statutory

14  maximum for Reams's crime of kidnap for robbery is life, the Board's parole denial does not

15  increase his sentence beyond the maximum term contemplated at the time of sentencing.  Also, in

16  *Blakely v. Washington*, 542 U.S. 296, 308 (2004), the United States Supreme Court specifically

17  held that the *Apprendi* rule does not invalidate indeterminate sentencing schemes.  *Blakely*, 542

18  U.S. at 308.  The Court explained that the purpose of the Sixth Amendment is to preserve the

19  power of juries, and that while indeterminate sentencing may increase the power of a judge (or

20  parole board), it does not do so at the expense of the jury.  *Id.* at 309.  The Court went on to

21  explain, "[i]n a system that says the judge may punish burglary with 10 to 40 years, every burglar

22  knows he is risking 40 years in jail."  *Id.*  It follows that in California, where kidnap for robbery

23  is punished with seven years to life, every perpetrator of kidnap for robbery knows he is risking a

24  lifetime in prison. Thus, the Board was free to consider all aspects of Reams's crime, not only

25  those to which he admitted or were specifically found beyond a reasonable doubt.

26  ///

27  ///

28  ///

Answer to Order to Show Cause; Memorandum of Points and Authorities                *Reams v. Kane*
                                                                                    C 07-3610 WHA (PR)

1

## III.

2

3

4

**REAMS FAILS TO RAISE A CLAIM THAT IS
COGNIZABLE IN FEDERAL HABEAS WITH RESPECT
TO HIS CLAIM THAT HE DOES NOT PRESENT A
CURRENT DANGER TO SOCIETY.**

5      A district court may entertain a petition for writ of habeas corpus "in behalf of a person in

6   custody pursuant to the judgment of a State court only on the ground that he is in custody in

7   violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

8   Here, Reams alleges that the Board violated his due process rights because it did not show that he

9   was a current threat to public safety. (Pet'r's P.&A. at 5.) Reams's claim fails to implicate a

10   federal liberty interest; furthermore, he alleges violations of state law only. Accordingly, the

11   petition should be dismissed for lack of jurisdiction.

12      Reams alleges that the proper test is "not whether some evidence supports the reasons the

13   Board cites for denying parole, but whether some evidence indicates [he] unreasonably dangers

14   public safety." (Pet'r's P.&.A. at 5.) However, Reams bases this allegation largely on California

15   statutes, regulations, and case law. As it is well established that federal habeas relief does not lie

16   for errors of state law, this claim must be dismissed. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

17   To the extent that Reams argues federal law, he cites *Biggs, Martin v. Marshall* [431 F.Supp. 2d

18   1038 (2006)], and *Irons* as dictating that the Board must normally set a parole release date using

19   the California sentencing matrices, and that continued reliance on the commitment offense

20   violates due process. (Pet'r's P.&A. at 6-10.) However, as argued above Argument I.A.4.), the

21   Supreme Court has never held that continued reliance on an unchanging factor to deny parole

22   violates due process (*see Musladin*, 127 S. Ct. at 654; *Landrigan*, 127 S. Ct. at 1942), circuit

23   court decisions are "non-dispositive" under § 2254(d)(1) (*see Crater*, 491 F.3d 1119, 1123, 1126,

24   n.8), and California state law commands that the crime be the primary consideration in the

25   Board's determination of parole suitability. Cal. Penal Code § 3041. Therefore, the Petition

26   should be denied.

27   ///

28   ///

Answer to Order to Show Cause; Memorandum of Points and Authorities                        *Reams v. Kane*
                                                                                          C 07-3610 WHA (PR)

## CONCLUSION

Initially, this Petition should be denied because under AEDPA, to establish entitlement to reversal of a state court parole denial, Reams must prove that the state court decisions denying habeas relief are contrary to, or an unreasonable interpretation of, clearly established federal law, or that the decisions involved unreasonable factual determinations. Reams does not offer such proof, nor does he contest that he had an opportunity to be heard and that he received a written copy of the Board's decision. That is all the due process to which he is entitled. Even if the Court applies the some-evidence standard, the state courts reasonably concluded that the Board's findings were supported by some evidence. For these reasons, Respondent respectfully requests that this Court deny Reams's petition for writ of habeas corpus.

Dated:  September 18, 2007

Respectfully submitted,


EDMUND G. BROWN JR.
Attorney General of the State of California

DANE R. GILLETTE
Chief Assistant Attorney General

JULIE L. GARLAND
Senior Assistant Attorney General

ANYA M. BINSACCA
Supervising Deputy Attorney General



PATRICIA WEBBER HEIM
Deputy Attorney General
Attorneys for Respondent

20103810.wpd
SF2007200588

Answer to Order to Show Cause; Memorandum of Points and Authorities

*Reams v. Kane*
C 07-3610 WHA (PR)

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   *Eugene Alvin Reams v. A. P. Kane, et al.,*

Case No.:   **U. S. D. C., N. D., SAN FRANCISCO DIV., C 07-3610 WHA (PR)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **September 19, 2007,** I served the attached

**ANSWER TO ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES WITH EXHIBITS 1 - 11**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**Eugene Alvin Reams, C-90508**
**Correctional Training Facility**
**P.O. Box 689**
**Soledad, CA 93960-0689**
in pro per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **September 19, 2007,** at San Francisco, California.

| | |
|---|---|
| J. Baker | ~~Baker~~ |
| Declarant | Signature |

20104916.wpd

Case Name:   *Eugene Alvin Reams v. A. P. Kane, et al.,*

Case No.:   **U. S. D. C., N. D., SAN FRANCISCO DIV., C 07-3610 WHA (PR)**

## INDEX OF EXHIBITS

| Exh. | Description |
| --- | --- |
| 1 | Abstract of Judgment |
| 2 | Hearing Transcript, 5/13/05 |
| 3 | Probation Officer's Report |
| 4 | Life prisoner Evaluations |
| 5 | 2004 Psychological Evaluation |
| 6 | San Diego Superior Court Petition for Writ of Habeas Corpus |
| 7 | San Diego Superior Court Order |
| 8 | Court of Appeal, Fourth Appellate, Division One, Petition for Writ of Habeas Corpus |
| 9 | Court of Appeal, Fourth Appellate, Division One Order |
| 10 | California Supreme Court Petition for Review |
| 11 | California Supreme Court Order |