**EXHIBIT 5**

C-file copy

**PSYCHOLOGICAL EVALUATION FOR THE BOARD OF PRISON TERMS**
**(REVISED AUGUST 1998)**
**PAROLE CONSIDERATION HEARING**
**DECEMBER 2004 LIFER CALENDAR**

**CORRECTIONAL TRAINING FACILITY, SOLEDAD**
**NOVEMBER 19, 2004**


This is a subsequent psychological evaluation for the Board of Prison Terms (BPT) on Inmate Eugene Reams, C-90508. This report is the product of a personal clinical interview of the inmate, conducted on November 19, 2004, for the duration of 60 minutes, as well as a review of his central file and unit health record. This clinical interview was for the express purpose of preparing this report. This report updates the November 6, 2000 psychological evaluation by Dr. Coate, PsyD., Senior Supervising Psychologist, Correctional Treatment Facility, Soledad.

The inmate was informed of the nature and purpose of the interview and the lack of confidentiality inherent in the present assessment. He was also informed that a report for the BPT would be prepared. He understood this and agreed to participate.

**PSYCHOSOCIAL ASSESSMENT**

I.  **IDENTIFYING INFORMATION:** He is a 39-year-old, single, Caucasian male. His date of birth is January 22, 1965. This evaluation will focus on updates and/or changes since his last BPT psychodiagnostic evaluation on October 31, 2000.

    Inmate Reams offered a correction to the previous BPT evaluation, dated November 16, 2000. Page two of the evaluation, section four, Family history, the last paragraph reads "The inmate denies any family history of alcohol or drug abuse. However, a prior BPT evaluation, dated July 8, 1992, states that his parents were 'devoted and heavy alcoholics'. The reference to the July 8, 1992 report referred to his mother's parents, Mr. Reams' maternal grandparents who were 'devoted and heavy alcoholics', not Mr. Reams' parents." The reader is referred to the psychosocial history section of the August 1992 psychiatric evaluation for the BPT documentation hearing, August 1992 calendar, page one, second to last paragraph. The psychosocial history reviews the fact that, "shortly after he was arrested, his mother and

REAMS, Eugene      C-90508      CTF      11-19-04      SS/sj      1

father were divorced and his mother apparently had a psychotic episode. She has been hospitalized and under psychiatric treatment off and on ever since. Her diagnosis of a bipolar disorder seems appropriate. It is interesting to note that both her parents were devoted and heavy alcoholics". The inmate denies the use of alcohol or drugs. Inmate Reams indicated that he thought the above information was significant to mention for two reasons: 1) He has never had a problem with the abuse of alcohol or drugs and; 2) he has attended Alcoholics Anonymous (AA) since 1996 as a self-help group because of the self-help aspect of it, not due to a problem with alcohol. Inmate Reams was non-defensive about this issue, but indicated that he thought it was important to mention because it is referenced in his 2000 BPT report as if there was a history of alcohol or drug abuse in his parents history that he had somehow misrepresented.

Since his last BPT hearing, Inmate Reams indicated he has completed the Impact program, as was requested by the BPT.

II. **DEVELOPMENTAL HISTORY:**

Please refer to the BPT psychological evaluation of 10/31/00.

III. **EDUCATIONAL HISTORY:**

Please refer to the BPT psychological evaluation of 10/31/00.

IV. **FAMILY HISTORY:**

Clarification made under Section I, Identifying Information. For further information, please refer to the BPT psychological evaluation of 10/31/00.

V. **PSYCHOSEXUAL DEVELOPMENT AND SEXUAL ORIENTATION:**

Please refer to the BPT psychological evaluation of 10/31/00.

VI. **MARITAL HISTORY:**

Please refer to the BPT psychological evaluation of 10/31/00.

REAMS, Eugene          C-90508          CTF          11-19-04     SS/sj          2

**VII. MILITARY HISTORY:**

Please refer to the BPT psychological evaluation of 10/31/00.

**VIII. EMPLOYMENT/INCOME HISTORY:**

Please refer to the BPT psychological evaluation of 10/31/00.

**IX. SUBSTANCE ABUSE HISTORY:**

Please refer to the BPT psychological evaluation of 10/31/00.

**X. PSYCHIATRIC AND MEDICAL HISTORY:**

Please refer to the BPT psychological evaluation of 10/31/00.

**XI. PLANS IF GRANTED RELEASE:**

Please refer to the BPT psychological evaluation of 10/31/00.

## CLINICAL ASSESSMENT

**XII. CURRENT MENTAL STATUS/TREATMENT NEEDS:** During the November 19, 2004 psychological evaluation, Inmate Reams was alert and oriented in four spheres. He was appropriately dressed and groomed. His speech was articulate and contextually meaningful. He presented as an individual of above average intelligence. There was no evidence of a thought or mood disorder and, in fact, he demonstrated significant flexibility in his affect. As during the 2000 evaluation, he was able to discuss the instant offenses with insight, empathy for the victims and their families, and what appeared to be sincere remorse for his misdeeds. He demonstrated insight, appropriate judgment, and his impulse control appeared to be intact and appropriate.

**Current Diagnostic Impressions:**

Axis   I:   No contributory clinical disorder
Axis  II:   No contributory personality disorder
Axis III:   No contributory physical disorder
Axis  IV:   Incarceration
Axis   V:   GAF = 90

REAMS, Eugene        C-90508       CTF        11-19-04      SS/sj      3

XIII. **REVIEW OF LIFE CRIME:** Inmate Reams' descriptions of the circumstances surrounding his commitment offense correspond very closely to the description in the probation officer report as well as earlier psychological evaluations and Life Prisoner Evaluation reports. Inmate Reams indicated that just prior to his "five day crime spree", he was extremely depressed and felt he "had no value to his father or his family." He indicated the significant financial problems and resulting stress that his father was experiencing caused him to behave towards Inmate Reams in ways that would have been unthinkable in the immediate past. Inmate Reams was kicked out of the house and told to support himself, which necessitated him dropping out of college and having such low self-esteem at that point that he did not care what he did or what happened to him. He indicated that he hoped and expected to be shot to death by the police in the course of his "crime spree". He indicated he felt hopeless, desperate, and completely without value, as he embarked upon five days of out of control behavior, which he indicated he accepts full responsibility for his actions during this time period. He indicated that he wished to die and yet, felt unable to stop the crime spree once it had begun. He indicated feeling more and more out of control and experiencing relief when it ended with him being shot in the leg by the police. He indicated his extreme surprise that he was not dead and also indicated that police should have killed him during his escape attempt. However, his suicidal thoughts and extreme depression subsided some time after this point.

XIV. **ASSESSMENT OF DANGEROUSNESS:**

A. Inmate Reams' violence potential within a controlled setting is considered to be well-below average relative to this level II inmate population. This assessment is based on consideration of several factors: 1) He had no record of juvenile convictions prior to the instant offense and no history of adult criminal activities predating his current commitment offense; and 2) He has no history of violence while incarcerated in CDC after serving 21 years in the system. On the other hand, his two CDC 115 violations were nonviolent. They were significant in their seriousness. His first violation was for forging a gate pass where two inmates attempted to escape. His only other CDC 115 was for gambling and this was in 1997. Consideration of these factors indicates a low potential for violence relative to this level II inmate population.

REAMS, Eugene        C-90508        CTF        11-19-04    SS/sj        4

    B.   In light of the factors mentioned in Item A above, and the evidence that inmate Reams has matured in his response to stressful situations, if he is released to the community, his violence potential is estimated to be no greater than that of the average citizen in the community.

    C.   Alcohol and/or drug abuse do not appear to be risk factors (as clarified in Section I, Identifying Information) that would be precursors to violence. However, it bears mention that he has benefited from the self-help aspect of AA since 1996, and that his continued involvement in AA, Narcotics Anonymous, or other self-help groups would be of assistance to inmate Reams should he receive a parole date.

## XV. CLINICIAN OBSERVATIONS/COMMENTS/RECOMMENDATIONS:

    A.   This inmate is competent and responsible for his behavior. He has the capacity to abide by institutional standards and has generally done so during his incarceration.

    B.   This inmate does not have a mental health disorder that would necessitate treatment, either during his incarceration or following upon parole.

    C.   This inmate does not have a significant drug or alcohol problem, but would continue to benefit from the self-help aspect of AA and, for this reason, continued participation is recommended.

*[signature]*, Ph.D. for

S. Stack, PhD
Clinical Psychologist
Correctional Training Facility, Soledad

*[signature]*, Ph.D.

B. Zika, Ph.D.
Senior Supervising Psychologist
Correctional Training Facility, Soledad

SS/sj

**REAMS, Eugene**    C-90508    CTF    11-19-04    SS/sj    5