# EXHIBIT 6
# Part 3 of 4

52

1    support.  One from my parents, one from a friend

2    of the family's named --

3         PRESIDING COMMISSIONER DALY:  Officer, would

4    you bring those over to me and at the same time,

5    will you bring me the pictures over then.

6         INMATE REAMS:  I think that's everything.

7    Thank you.

8         PRESIDING COMMISSIONER DALY:  Okay, and this

9    is a picture of your --

10        INMATE REAMS:  Of my parents.

11        PRESIDING COMMISSIONER DALY:  And this is

12   your dad and stepmother?

13        INMATE REAMS:  That's correct.

14        PRESIDING COMMISSIONER DALY:  Okay, and how

15   long have they been married?

16        INMATE REAMS:  Since 1989.

17        PRESIDING COMMISSIONER DALY:  Okay, all

18   right.  We have a letter here from Eugene and

19   Leona Reams.  Now did this come in in December of

20   '04?  This is the envelope for it?

21        INMATE REAMS:  Yes, it is.

22        PRESIDING COMMISSIONER DALY:  Okay, my son

23   was removed from society 21 years ago and my

24   seventh letter of support.  My letters of support

25   for my only child have outlined the exact nature

26   of the support our family will give.  Our family

27   members are willing to actively help him

1    reintegrate back into society.  We are in a

2    position to cover his initial financial expenses.

3    I will personally be there to greet him when he

4    leaves Soledad Training Facility.  I will give

5    Eugene all needed assurance to ensure his success

6    on parole.  He realizes the level of support and

7    confidence that his family has in him.  I will

8    review and assist in his efforts to comply with

9    all the rules and regulations governing his

10   conditions of parole and I will assist him in his

11   efforts to rejoin society with a positive manner.

12   He has a part time job with us as a computer

13   operator in the bookkeeping department.  We have

14   two businesses; one in Southgate and one in Iola,

15   Kansas.  When my son is released from prison, my

16   projected itinerary as follows:  Upon confirmation

17   of his release, I will have a room selected in San

18   Diego.  I will pay and -- So is your room going to

19   be the studio apartment at the --

20        INMATE REAMS:  That's changed, because I was

21   under the -- I was under the belief that under no

22   circumstances could I parole anywhere but to San

23   Diego.

24        PRESIDING COMMISSIONER DALY:  Right, but you

25   can anywhere in California.

26        INMATE REAMS:  I wasn't aware of that.

27        PRESIDING COMMISSIONER DALY:  Yeah, okay.

54

1    **INMATE REAMS:**  At the previous hearings I've
2    submitted documentation to go to Los Angeles, and
3    I've always been told no.

4    **PRESIDING COMMISSIONER DALY:**  And actually
5    it changed a couple of years ago; about three
6    years ago.

7    **INMATE REAMS:**  Right.

8    **PRESIDING COMMISSIONER DALY:**  That you
9    contain -- That you can parole anywhere in
10   California.  Said he's going to pay your living
11   expenses for the first two months of your parole.
12   He will report to parole office when he's supposed
13   to.  I, as his father, will reside with him for a
14   period of time.  This will serve to assist in
15   re-acclimating him back into society.  If there is
16   a need, I will spend more time.  However, I don't
17   expect this will be necessary.  I don't know what
18   more I could do to assure the Board that my son's
19   parole plans are adequate, verifiable and
20   complete.  My wife, his stepmother, and I own two
21   health food stores.  One is located in Southgate
22   area of LA and the other, Iola, Kansas.  And
23   finances for parole will not be a problem.  No one
24   other than my son's victims is more painfully
25   aware of Eugene's negative impact on the lives of
26   others as the result of his criminal actions than
27   his family and friends.  We've discussed this

1  openly and at length within our family structure,

2  with our friends and with Eugene, himself.  He has

3  admitted responsibility for his crimes and

4  accepted his punishment.  The time has come for

5  his incarceration to end.  We have been following

6  his progress in prison.  We are aware of his many

7  certificates and accomplishments.  We are happy to

8  learn that our encouragement helped him motivate

9  and complete his two vocational trades and his

10  academic studies.  So this is written by your dad.

11  A very good letter of support.  And then these --

12  Who is the picture of?

13          INMATE REAMS:  That's Helen, who I am

14  primarily friends with.  That's her husband and

15  her two sons.  Actually one is her son and one is

16  the --

17          PRESIDING COMMISSIONER DALY:  Okay, and so

18  how did you meet Helen and Harrison Young?

19          INMATE REAMS:  Friends of the family.

20          PRESIDING COMMISSIONER DALY:  Okay, we

21  continue to correspond with you.  In order to have

22  validity with the Board, it is important in our

23  estimation that we share some of the personal

24  information.  So they just go on and talk about,

25  you know, their work and her husband is a retired

26  Master Sergeant with the Marine Corps, having been

27  in 23 years.  He's also a former LA Police

56

1   Officer, an Orange County Sheriff and he is

2   currently teaching a day class for learning

3   handicapped.  And then what she's doing.  Said we

4   would not write to you endorsing Mr. Reams nor

5   putting our integrity at stake if we did not fully

6   believe that if paroled, he could be a positive

7   and contributing member of society.  And then of

8   course, everybody always knows -- wants to know

9   how come you're still in.  I meant most of the

10  inmates' families think that.  Okay.

11          **INMATE REAMS:**  That's a natural question.

12          **PRESIDING COMMISSIONER DALY:**  You have an

13  outstanding work ethic and it's our desire to

14  provide ongoing support and encouragement.  When

15  paroled, we are committed to being a support

16  system for him the rest of his life.  We commit to

17  help provide housing, job placement, spiritual and

18  emotional counseling, educational needs and

19  monetary support as needed and we are the owner of

20  several rental properties and trust and we would

21  like to hire Reams to help with our bookkeeping.

22  He would be able to do this from any area with

23  access to a computer, which we are willing to

24  provide.  We hope to have a -- be a stable support

25  as he transitions from Soledad to the outside

26  world.  You've grown from a rebellious teenager to

27  a responsible and caring adult.  Harrison and

57

1  Helen Young.  Okay, good letters of support.

2          INMATE REAMS:  I think those are probably

3  just additional copies.

4          PRESIDING COMMISSIONER DALY:  These are

5  copies; additional copies.  Okay, and then who is

6  Betty Hernandez?

7          INMATE REAMS:  She is my --

8          PRESIDING COMMISSIONER DALY:  This is your

9  aunt.

10          INMATE REAMS:  My aunt.  That's correct.

11          PRESIDING COMMISSIONER DALY:  Okay, and she

12  says you're a serving a seven to life for a

13  kidnapping and robbery and he was removed from our

14  family about 21 years ago.  We were very close.  I

15  was very proud to hear him regard me as his

16  favorite aunt.  And she says she's maintained

17  contact with you by visiting, accepting collect

18  calls and maintaining written communication. She

19  knows about all of your accomplishments.  When

20  Eugene is paroled, I will maintain our personal

21  relationship and encourage him to continue to

22  become a productive member of society.  I expect

23  great things from him and am confident he has

24  learned his lesson.  He has an extended and

25  supportive family and we are coordinating our

26  efforts to provide for his every need.  And we are

27  tailoring our support for the area.  And she was

58

1    under the understanding that you had to parole to

2    San Diego, but you now that you can go anywhere.

3    And of course, she's disappointed that you haven't

4    been paroled yet.  So very nice.  You have some

5    good letters of support and you've had good

6    support from your family.

7         INMATE REAMS:  Thank you.  I'm very lucky.

8         PRESIDING COMMISSIONER DALY:  We send out

9    3042 notices, and those are notices that go out to

10   law enforcement, District Attorney, the courts,

11   victim's next of kin.  And we do have a letter

12   that was received from the San Diego County

13   District Attorney's Office, but we also have a

14   representative from that office, who will speak at

15   the appropriate time.  So I will not read the

16   letter.  With that, we're open for questions.  Do

17   you -- I mean when you read over this arrest

18   record, when the police went to the hotel, when

19   they -- a search of the hotel room, they recovered

20   handcuffs, four handy talkie radios, keys for cash

21   registers and for the safe, four of the five

22   jackets taken from a Neiman Marcus store, a

23   revolver, keys, flashlight taken from Calvin

24   Nixon, a security guard uniform, a gun belt, a

25   pager from Mario Castaneda, registration slips,

26   .12 gauge shotgun, a loaded .38 revolver, speed

27   loaders and a box of ammunition and a bag

59

1    containing $2,369.94, and other items of clothing

2    and keys.  This was a pretty sophisticated

3    operation.

4        INMATE REAMS:  I don't think it was

5    sophisticated.  I think it was more of a Keystone

6    Cops situation.

7        PRESIDING COMMISSIONER DALY:  Okay, all

8    right.  So the two-way radios and that, is those

9    were taken from --

10        INMATE REAMS:  Those were taken from Neiman

11    Marcus.

12        PRESIDING COMMISSIONER DALY:  Okay.

13        INMATE REAMS:  Yeah, they belonged to Neiman

14    Marcus.

15        PRESIDING COMMISSIONER DALY:  All right, and

16    then --

17        INMATE REAMS:  Which was that day, I believe

18    or the day -- Let's see, Tuesday.  I believe the

19    robbery happened on Monday, then we were arrested

20    on Tuesday.

21        PRESIDING COMMISSIONER DALY:  Okay.

22        INMATE REAMS:  I'm not sure.

23        PRESIDING COMMISSIONER DALY:  You've done a

24    lot of computer work.

25        INMATE REAMS:  Yeah, I'm a good

26    administrative assistant.

27        PRESIDING COMMISSIONER DALY:  So have you

60

1    ever developed a resume?  Have you ever sat down

2    and looked at your whole history of incarceration,

3    every class you've taken, all of the vocational?

4    Have you ever really outlined everything and

5    pulled --

6            INMATE REAMS:  Oh, yeah.

7            PRESIDING COMMISSIONER DALY:   -- it

8    together?

9            INMATE REAMS:  I have a resume.  Yeah.

10            PRESIDING COMMISSIONER DALY:  Do you have it

11    with you?

12            INMATE REAMS:  I don't believe so.

13            PRESIDING COMMISSIONER DALY:  So does it

14    list all of your self-help, all of your vocational

15    studies?

16            INMATE REAMS:  It lists all my certificates.

17            PRESIDING COMMISSIONER DALY:  Okay.

18            INMATE REAMS:  It lists not specific jobs,

19    but what I -- what those jobs entailed and what I

20    did, and that's pretty much it.  I don't have

21    anything on the self-help side other than to

22    articulate my involvement with the community.

23            PRESIDING COMMISSIONER DALY:  Okay, do you

24    have any questions?

25            DEPUTY COMMISSIONER HARMON:  Back in '95,

26    Doctor Kitt, one of the things he said in here was

27    that you were emotionally stable at that time.

1    And you know, since you've been incarcerated and

2    life hasn't gotten easier on the outside, life has

3    gotten harder.  What do you think is going to keep

4    you from regressing and getting back to the point

5    where you wish some police officer is going to

6    shoot and kill you?

7         INMATE REAMS:  I don't -- It's impossible

8    for me to ever get to that point again.  It was

9    the -- It was naive-ness back then and my

10   immaturity that allowed me to be influenced.  That

11   I allowed myself to be influenced.  That no longer

12   exists.  I am my own person and I do what I

13   believe is right.  And I try to do the right thing

14   in all situations.  You get to that point by

15   wanting to be killed by an officer, a suicide by a

16   police is what you're essentially talking about,

17   by not being a person, not knowing who you are.

18   And what teenager at 18 knows who they are?  I

19   mean that's understandable that not every teenager

20   goes to this length, but the situation that I

21   involved myself in is what led -- is what led to

22   that.  And today, that situation is no longer

23   there.  I feel like a healed person, a healed

24   being.  I am my own person.  I am no longer

25   influenced over by anybody or anybody else.  I

26   carry myself and conduct myself in the best manner

27   and with honor.  That's what's going to keep me

62

1.  from being a problem to society, to anybody else

2.  is my belief in myself and my understanding of it

3.  and knowing who I am and my involvement in looking

4.  at people as -- and understanding them.  When I

5.  was 18, all I saw was myself.  I didn't see -- I

6.  didn't the victims.  I didn't see anybody else's

7.  really involvement.  It never really impacted me

8.  the way it has since my mom got mugged.  That

9.  started me on the path of realization of there's

10. another side to life other than just what is

11. reflecting in the mirror.

12.     **DEPUTY COMMISSIONER HARMON:**  Did you

13. complete a thought?

14.     **INMATE REAMS:**  I believe I did.

15.     **DEPUTY COMMISSIONER HARMON:**  Okay, thanks.

16. That's all I have and the District Attorney is

17. back on there, by the way.

18.     **PRESIDING COMMISSIONER DALY:**  Okay, but I

19. -- you know I want to go back, because I'm looking

20. at this case as everybody else would look at it.

21.     **INMATE REAMS:**  Yes, Ma'am.

22.     **PRESIDING COMMISSIONER DALY:**  And in 1995, I

23. meant we sat here and we talked about your alcohol

24. and drug history and you said you had none.

25.     **INMATE REAMS:**  I had -- Well I had

26. involvement in marijuana, but I meant I had no

27. real history of it.  There was separate incidents,

63

1    but the -- I've admitted to the marijuana use.

2    It's throughout my record and since you'd reviewed

3    the record, I just --

4            PRESIDING COMMISSIONER DALY:  Okay.

5            INMATE REAMS:  -- assumed that you were

6    talking about anything of substantial.

7            PRESIDING COMMISSIONER DALY:  Okay, well

8    because in May of '95, Doctor Kitt, who did the

9    report said that you -- he lists Cannabis Abuse.

10           INMATE REAMS:  Sure, and it's in several of

11   the reports.

12           PRESIDING COMMISSIONER DALY:  So how much

13   pot did you use?

14           INMATE REAMS:  I smoked probably a total

15   times of six or seven times.

16           PRESIDING COMMISSIONER DALY:  Okay, so the

17   Doctor also says that during observation in the

18   institution, it is not possible to determine if he

19   has made any significant psychiatric change that

20   would transfer to his behavior in a free

21   environment.  In a less controlled setting, such

22   as a return to the community, his future behavior

23   is still potentially the same as prior to

24   incarceration.  Okay, that's in '95.

25           INMATE REAMS:  That's in 1995.

26           PRESIDING COMMISSIONER DALY:  Right, ten

27   years ago.  Okay, so then I'm looking to see how

64

1    is it -- it's addressed in the future psychiatric

2    reports.  And in '97, they just said that they

3    don't really -- they don't really address what had

4    -- what had been said before.

5         ATTORNEY TARDIFF:  Yeah, on that '97 report,

6    I just have one page.

7         PRESIDING COMMISSIONER DALY:  That's all I

8    have.

9         ATTORNEY TARDIFF:  Is that all you have?  I

10   think it must be missing.

11        PRESIDING COMMISSIONER DALY:  Look and see

12   if there is additional on the '97, because I want

13   to see if it's addressed.  Then in the '98 report,

14   he says that the recommendations and conclusions

15   of the most recent Board of Prison Terms' report,

16   psychological evaluation are still accurate and

17   valid.  So I don't know if there was more to the

18   '97 or if he's referring back to the '95.

19        ATTORNEY TARDIFF:  There must be more to the

20   '97 than one page.

21        INMATE REAMS:  No, it was just one page.

22        PRESIDING COMMISSIONER DALY:  Well I don't

23   know what they're referring to.

24        ATTORNEY TARDIFF:  So that's all there was?

25        INMATE REAMS:  Wait a minute.  Let me see

26   this again.

27        PRESIDING COMMISSIONER DALY:  Just one page?

65

1       **ATTORNEY TARDIFF:**  But it's not even signed

2  or anything.

3       **INMATE REAMS:**  Oh, this is -- this is the

4  one -- this is the one that was one page.  This

5  one from the '97.  You're right.  There is several

6  pages on that.

7       **ATTORNEY TARDIFF:**  It might be not in the

8  C-File.  I mean there's no signature.

9       **PRESIDING COMMISSIONER DALY:**  Because

10  there's no signature or anything on it and there's

11  nothing in the C-File.  Right?

12       **INMATE REAMS:**  I was just reviewing that

13  this morning too, and I had copies of it.

14       **DEPUTY COMMISSIONER HARMON:**  The C-File

15  shows one page.

16       **ATTORNEY TARDIFF:**  And I don't know what

17  they're referring to.

18       **PRESIDING COMMISSIONER DALY:**  So in coming

19  to the '98 report, I don't know what he's

20  referring to when he says that the psychological

21  evaluations are still accurate and valid.  And

22  then we go to 2000.

23       **INMATE REAMS:**  Okay, here's the -- I have a

24  copy of the '97 report and I -- and it's two

25  pages.  Here's the second page if you'd like to

26  see it.  I thought I had it, but I wasn't sure.

27       **PRESIDING COMMISSIONER DALY:**  Would you

66

1    bring that over to us, Officer.

2        ATTORNEY TARDIFF:  Well let me look at it.

3        INMATE REAMS:  Well I'm going to point out

4    what she's specifically talking about, which is

5    this right here.

6        PRESIDING COMMISSIONER DALY:  Okay, so the

7    second page in '97, was authored by Doctor Terrini

8    and it says Anti Social Personality Disorder

9    Improved and he still lists Adult Anti Social

10   Behavior and Marijuana Abuse in Axis I.  And he

11   says that you're competent and responsible for

12   your behavior and says regarding your violence

13   potential, given greater maturity, your lack of

14   115's and his -- your violence potential is

15   estimated below average relative to the inmate

16   population.  And there seems to be no need for --

17   the inmate is not in need of any mental health.

18   So all he does is compare you to the average

19   inmate relative to that inmate population.  Okay,

20   so I'm just trying to get some clarification and

21   I'll get that back to you with all this.  So then

22   we go to 2000, and they don't really -- they just

23   say that you don't have a mental health disorder

24   which would need treatment.  And in 2000, they

25   just say that you're -- you would be a low risk.

26   Okay, District Attorney, do you have any

27   questions?

67

1          DEPUTY DISTRICT ATTORNEY SACHS:  I have no

2    questions for the inmate, Commissioner.

3          PRESIDING COMMISSIONER DALY:  Okay.

4          DEPUTY DISTRICT ATTORNEY SACHS:  Thank you.

5    Counsel?

6          ATTORNEY TARDIFF:  No.

7          PRESIDING COMMISSIONER DALY:  District

8    Attorney, go to closing.

9          DEPUTY DISTRICT ATTORNEY SACHS:  On behalf

10   of The People of the State of California, we would

11   respectfully oppose parole because we do feel that

12   the release of Mr. Reams would pose an

13   unreasonable risk of danger to society.  This

14   offense was carried out in a dispassionate and

15   calculated manner in which multiple victims were

16   attacked and suffered incidents.  The commitment

17   offense demonstrates a crime spree that included

18   multiple crimes, such as kidnapping for robbery,

19   robbery and burglary and given the totality of all

20   of the circumstances in this case, we do not feel

21   that he is suitable for parole at this time or

22   would behave any differently in an uncontrolled

23   setting and that further observation and

24   incarceration is necessary in order to ensure that

25   public safety is not in -- not compromised by an

26   improvident release upon parole at this time.

27   Therefore, we are opposed to parole.

68

1        **PRESIDING COMMISSIONER DALY:**  Counsel.

2        **ATTORNEY TARDIFF:**  Thank you.  In terms of

3  Mr. Reams' pre-incarceration history as well as

4  his post-incarceration history, it's quite

5  positive.  He came from a good background; high

6  school graduate, some college.  His family

7  appeared to be supportive of him emotionally,

8  that's for sure, and financially until they

9  couldn't any longer.  And I don't see that there's

10  any problem in that area.  He also had no prior

11  criminal history at all.  In terms of the crime

12  itself, he's always accurately described the

13  commitment offense and his version has been

14  substantially the same as the official versions

15  from throughout his incarceration.  The psych

16  evaluations state, particularly the most recent

17  ones, that -- and that includes the 2000 and the

18  2004, that he had insight and empathy.  He showed

19  sincere remorse, appropriate judgment.  He has

20  good impulse control, therefore, he seems to have

21  gotten a grasp of the commitment offenses and why

22  they occurred, which is the insight that is needed

23  to ensure that he is no longer a risk to society.

24  In terms of his post-conviction factors, he's

25  participated in a lot of self-help and pretty much

26  has gotten into all the areas; Anger Control,

27  Individual Therapy, Meditation, Impact, AA.  He's

69

1    done volunteer work.  He's educationally upgraded

2    himself.  His work history since he's been

3    incarcerated has been positive and stable.  He has

4    vocations.  He's only had two 115's.  The last one

5    was in '97.  That's eight years ago; non-violent

6    in nature.  He's had a high GAF Score of 90.

7    There are no risk factors that need to be of

8    concern should he be released out into the

9    community.  There's no substance abuse that needs

10    to be dealt with.  There's no thought or mood

11    disorders.  He has strong family support.  He has

12    a job and he has housing.  His 2000 and 2004 psych

13    evaluations are all -- both of those state that he

14    would pose a low degree of risk or his risk

15    potential is the same as the average individual in

16    the community.  And that goes from 2000, so we

17    have now five years of where he is low.  I do

18    agree that these, the '98 and '97 evaluations are

19    difficult to interpret.  The '98 doesn't say

20    anything in it.  The '97 just says he shows

21    considerable insight.  His judgment was good.  I

22    think the mental health issue has been clarified

23    in the 2000 evaluation, and that was with regard

24    to the personality -- Adult Anti Social and

25    Sociopathic.  And that was not found to be the

26    case at this point, and that was five years ago.

27    And most currently, again, it was not found to be

70

1   present.  So if that were, in fact, present at

2   some time, it apparently has left him or however

3   you say it, diminished, removed itself from him

4   within his incarceration history.  So I would

5   submit that further incarceration would be of no

6   benefit to society at this point and that he has

7   done all the necessary programming and exploration

8   of himself to render that he is no longer a risk

9   to society.  Thank you.

10       **PRESIDING COMMISSIONER DALY:**  Okay,

11  Mr. Reams, this is your opportunity to make a

12  statement to the Panel as to why you feel you are

13  suitable for parole at this time.

14       **INMATE REAMS:**  I feel I'm suitable for

15  parole at this time because I am no longer a

16  threat to society.  I've matured and developed

17  myself and I'm -- and I honestly believe that I am

18  a healed human being.  Thank you.

19       **PRESIDING COMMISSIONER DALY:**  Okay, I wanted

20  to make sure you completed that thought.  It's

21  1320.  We're going to recess for deliberations.

22                  R E C E S S

23                   --o0o--

24

25

26

27

71

1          CALIFORNIA BOARD OF PRISON TERMS

2                    D E C I S I O N

3          PRESIDING COMMISSIONER DALY:   Okay, we're back

4     on record in the matter of Eugene Reams.   And the

5     Panel has reviewed all of the information received

6     from the public and relied on the -- Wait a

7     minute.   I need to bring the DA back here.   Okay,

8     the Panel is back on record in the matter of

9     Eugene Reams.   And the Panel has --

10         DEPUTY DISTRICT ATTORNEY SACHS:   I'm back.

11    Thank you.

12         PRESIDING COMMISSIONER DALY:   Thank you.   Has

13    relied on all of the information received from the

14    public in concluding that the prisoner is not yet

15    suitable for parole and would pose an unreasonable

16    risk of danger to society or a threat to public

17    safety if released from prison.   The offenses were

18    carried out with a great amount of callous

19    disregard for what the victims were going through.

20    There were about 19 victims who were attacked.

21    There were 27 counts of offenses.   And 14 of the

22    victims were bound and gagged.   These crimes were

23    carried out in a very calculated manner in that

24    they were all pre-planned.   And the victims were

25    abused by being bound and gagged and the offenses

26    were carried out in a manner that showed a total

27    EUGENE REAMS   C-90508   DECISION PAGE 1    5/13/05

72

1   disregard for the fear of the victims at the time.

2   And the motive for the crimes were very trivial in

3   relation to the offenses in that these were

4   strictly for material gains and selfish reasons.

5   These conclusions are drawn from a Statement of

6   Facts, that the prisoner and his crime partner

7   were responsible for multiple car thefts,

8   robberies and assaults of 27 counts with 19

9   victims.  And they resulted in the accumulation of

10  the commitment offense and the current arrest and

11  incarceration.  The prisoner has actually minimal

12  criminal history.  He had nothing -- As a -- As a

13  juvenile he had three speeding violations and he

14  also had possession, a misdemeanor conviction for

15  carrying a concealed weapon in 1982.  And with the

16  adult convictions, these were his only offenses.

17  He had not been arrested before.  However, these

18  offenses were multiple in nature.  And actually he

19  had a stable social history and as far as his

20  parental upbringing, he did have very very limited

21  use of marijuana.  And so his background does not

22  indicate a lot of severe problems.  He's only had

23  two 115's since he has been incarcerated and the

24  last one was in 1997, for gambling.  He has been

25  programming in a continuous steady manner.  And

26  the psychiatric/psychological report dated 7/15 of

27  **EUGENE REAMS   C-90508   DECISION PAGE 2    5/13/05**

1   '04, by Doctor Stack appears to be supportive and

2   is a very adequate report.   And the parole plans

3   appear to be in order and he has good support from

4   his family.   The Hearing Panel notes that 3042

5   notices indicate an opposition to a finding of

6   parole suitability.   Specifically from the

7   District Attorney of San Diego County who was

8   present at the hearing today and had also sent in

9   a letter of opposition.   This is in looking at

10  what all you've done, Mr. Reams, you've -- Gosh,

11  you've held a number of work assignments and some

12  of them are the project coordinator in the

13  computer room, culinary dockworker, tier tender,

14  clerk, porter, dining hall.   You are a high school

15  graduate.   You've worked as a teacher's aide.

16  You've taken some Destinos classes.   In vocation,

17  you have your vocational computer technology and

18  refurbishing.   You've taken some business

19  management and business applications.   You've been

20  involved in AA, Men's Advisory Council,

21  Communicable Diseases classes, Impact, Science of

22  the Mind and Meditation, Creative Conflict, One-

23  on-One with Doctor Bakeman, Real Estate Principles

24  course, Distance Learning Program, American and

25  Life Skills and you have several laudatory chronos

26  in your file; the Children's Holiday Festival, AA

27  **EUGENE REAMS   C-90508   DECISION PAGE 3   5/13/05**

74

1    participation, setting up the curriculum for

2    Project Change, cataloging books for the

3    Protestant Chapel. So you've been involved in a

4    lot of positive things. However, these positive

5    aspects do not outweigh the factors of

6    unsuitability. This is going to be a one year

7    denial, Mr. Reams. And I'm going to make a couple

8    of comments to you, and this is just my personal

9    observation. But I totally believe that in doing

10   a hearing, I need to give you honest feedback on

11   what my thoughts were. It was really my intent to

12   come in here today and to go through absolutely

13   every one of the crimes and talk with them about

14   -- with you about them. And you cut me off.

15       INMATE REAMS: Yes, Ma'am.

16       PRESIDING COMMISSIONER DALY: You said you

17   didn't want to talk about them. You'd talked

18   about them. Everything you had to say has been

19   said. Who was sitting on the other side of the

20   table determining whether or not you're suitable

21   for parole? And I just -- I felt rather defiant

22   and that was why I asked you if you had some

23   hostility towards me, because I looked at how long

24   you've been down. I looked at everything that you

25   have been doing and then looking at the good

26   support that you have from your family, your job,

27   **EUGENE REAMS   C-90508   DECISION PAGE 4   5/13/05**

1   your parole plans and everything lined up.  I

2   wanted to go through these one by one, read them

3   on the record because quite frankly, I don't

4   believe that they've ever been thoroughly gone

5   through by any Panel.

6          INMATE REAMS:  They were.

7          PRESIDING COMMISSIONER DALY:  As reading them

8   verbatim and talking about each one of the crimes.

9   And I really wanted to do that today and you cut

10  me off and you didn't really want to do it.  And

11  so I just have to tell you that when a Panel is

12  ready to give you a date, in order to send it

13  forward to Decision Review and then for it to go

14  to the Governor's Office, we have to show that the

15  crime was thoroughly discussed and acknowledged

16  and that we have a good understanding of your

17  acceptance of responsibility and how you feel

18  about it and consideration given to the impact on

19  the victims and everything.  And I, quite frankly,

20  didn't feel I had a chance to do that today.

21  Okay, that was number one.  Number two, what I

22  think would be very good for you to do because you

23  can see what all my scribbling of the things that

24  you've done.  I think you should go back from the

25  time that you entered and I think that you ought

26  to, along with your resume, list every one of the

27  EUGENE REAMS  C-90508  DECISION PAGE 5   5/13/05

76

1   self-help classes you've ever been involved with.
2   List all of the vocational things that you've been
3   doing.  You read books.  If you read books, list
4   the books and things that you've read and really
5   have them outlined and prepared to give them to
6   the Panel next time you come in.  I mean I went
7   through here and I dug out a lot of stuff.  But I
8   think for you to just recap it, to bring a resume
9   in and have it presented for you.  I think that it
10  would be really helpful and it isn't that we don't
11  have the ability to do it, but we just want to
12  make sure that we're not missing anything.  So
13  this is going to be a one year denial.  And we're
14  just asking that you remain disciplinary free and
15  continue with whatever vocational programming and
16  whatever self-help that you can do.  And then
17  we'll see you in one year.  You have the
18  possibility of getting out and you know the
19  Governor doesn't have the final say so on your
20  case.
21      INMATE REAMS:  I'm aware of that.
22      PRESIDING COMMISSIONER DALY:  Okay, so it's
23  the Panel Member who comes in and has to argue
24  with all of the other to present your case to the
25  other Commissioners.  And right now, I'd be hard
26  pressed to say that, you know, that I looked at
27  EUGENE REAMS  C-90508  DECISION PAGE 6  5/13/05

77

1  everything thoroughly and that I really feel that

2  you're suitable.  I was cut short, so I -- that's

3  my impression, so I'm leaving you with that.  And

4  we'll see you in one year.  Any comments,

5  Commissioner Harmon?

6      **DEPUTY COMMISSIONER HARMON:**  I don't think I

7  can add too much to that other than to tell you

8  that you are a good candidate and you're getting

9  better.  A lot of the things that you were talking

10  about in terms of the positive movement you've

11  made over the years in terms of finding yourself

12  and things like that, I think they're true.  I do

13  believe you and I think you're going to make it

14  out there.  And there's some rough edges maybe

15  that need to be smoothed out a little bit here as

16  identified by the Commissioner.  But I would

17  expect that in the near future you're going to be

18  successful and I think you need (indiscernible) to

19  address all those issues again.  And I wish you

20  luck, sir.

21      **INMATE REAMS:**  Thank you.

22      **PRESIDING COMMISSIONER DALY:**  Okay.

23      **DEPUTY COMMISSIONER HARMON:**  Okay.

24      **PRESIDING COMMISSIONER DALY:**  All right.  That

25  concludes the hearing.  It's 1400 hours.

26      **INMATE REAMS:**  Thank you.

27  **EUGENE REAMS  C-90508  DECISION PAGE 7    5/13/05**

78

1         DEPUTY DISTRICT ATTORNEY SACHS:   Thank you.

2         PRESIDING COMMISSIONER DALY:   Thank you.

3                         --o0o--

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23    PAROLE DENIED ONE YEAR              SEP 10 2005

24    THIS DECISION WILL BE FINAL ON:_____

25    YOU WILL BE PROMPTLY NOTIFIED IF, PRIOR TO THAT

26    DATE, THE DECISION IS MODIFIED.

27    EUGENE REAMS  C-90508  DECISION PAGE 8    5/13/05

79

## CERTIFICATE AND

## DECLARATION OF TRANSCRIBER

I, SANDRA TRIPLETT, a duly designated transcriber, CAPITOL ELECTRONIC REPORTING, do hereby declare and certify under penalty of perjury that I have transcribed tape(s) which total one in number and cover a total of pages numbered 1 through 78, and which recording was duly recorded at CORRECTIONAL TRAINING FACILITY, at SOLEDAD, CALIFORNIA, in the matter of the SUBSEQUENT PAROLE CONSIDERATION HEARING of EUGENE REAMS, CDC No. C-90508, on MAY 13, 2005, and that the foregoing pages constitute a true, complete, and accurate transcription of the aforementioned tape(s) to the best of my ability.

I hereby certify that I am a disinterested party in the above-captioned matter and have no interest in the outcome of the hearing.

Dated May 26, 2005, at Sacramento County, California.

_____
Sandra Triplett
Transcriber
**CAPITOL ELECTRONIC REPORTING**

**EXHIBIT B**

BOARD OF PRISON TERMS                                                    STATE OF CALIFORNIA

# LIFE PRISONER: PAROLE CONSIDERATION
## PROPOSED DECISION  (BPT §2041)

I. [ ]   **PAROLE DENIED**

If this proposed decision denying parole is approved, the Board will send you a copy of the approved decision, including the reasons for denial of parole, within 30 days of the hearing.

II. [X]   **PAROLE GRANTED**   *inmate not to be released until Governor has exercised his review authority*

   A. Base Period of Confinement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . __177__ Months

     __CR 66 202__  __(4)__  __209(b)__
     Case No.    Count No.    Offense

   B. Firearm Enhancement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . + __0__ Months

   C. Other Crimes Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . + _____ Months

     __CR 66 202__  __7__  __209(b)__  __42__ mos.
     Case No.    Count No.    Offense

     _____  _____  _____  _____ mos.
     Case No.    Count No.    Offense

     _____  _____  _____  _____ mos.
     Case No.    Count No.    Offense

   D. Total Term . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = __186__ Months

   E. Postconviction Credit From __12-7-88__ To __5-18-04__  __60__ Months
                   (Date)        (Date)

   F. Total Period of Confinement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = __126__ Months

The period of confinement indicated is a tentative decision proposed by this panel. The decision will be reviewed pursuant to BPT §2041, and, if approved, a copy of the approved decision will be sent to you within 30 days. At that time appropriate pre-prison credits will be applied and a parole release date computed.

You will not engage in any conduct specified in BPT §2451. Such conduct may result in rescission or postponement of your parole date.

I. If the proposed decision denying or granting parole is disapproved, you will receive a copy of the proposed decision and the reasons for disapproval. You will then receive a copy of the modified decision or will be scheduled for a new hearing, as appropriate.

| PANEL HEARING CASE | |
| --- | --- |
| ime _____ | Date _____ |
| ime _____ | Date _____ |
| me _____ | Date _____ |

| | CDC NUMBER | INSTITUTION | HEARING DATE |
| --- | --- | --- | --- |
| TAYLOR, HAROLD | C-90514 | CTF | 5-18-04 |

BPT 1005 (Rev. 8/1/81)

Distribution: White—C. File,
Canary—BPT
Pink—Prisoner

**EXHIBIT C**

**FILED**

OCT - 1 2003

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MIKE YELLEN,

      Petitioner,

      vs.

DIANE BUTLER, et al.,

      Respondents.

No. CIV S-01-2398 MCE GGH P

ORDER

_____/

      Petitioner, a state prisoner proceeding pro se, has filed this application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local General Order No. 262.

      On August 20, 2003, the magistrate judge filed findings and recommendations herein which were served on all parties and which contained notice to all parties that any objections to the findings and recommendations were to be filed within twenty days. Respondent Diane Butler has filed objections to the findings and recommendations.

      In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C) and Local Rule 72-304, this court has conducted a de novo review of this case. Having carefully reviewed the entire file, the court finds the findings and recommendations to be supported by the record and by proper analysis.

33

1    Accordingly, IT IS HEREBY ORDERED that:

2        1. The findings and recommendations filed August 20, 2003, are adopted in full;

3    and

4        2. Petitioner's application for a writ of habeas corpus is granted as to petitioner's

5    due process claim that there was not sufficient evidence to support the 1999 decision finding him

6    unsuitable for parole; within thirty days of the date of this order, petitioner shall be given a parole

7    date, assuming his record remains substantially unchanged from the time of the 1999 hearing; the

8    petition is denied in all other respects.

9    DATED: _____SEP 30 2003_____

10

11

12

13                            MORRISON C. ENGLAND JR.
                              UNITED STATES DISTRICT JUDGE

14   /yell2398.806

15

16

17

18

19

20

21

22

23

24

25

26

                                        2