# EXHIBIT 7

F I L E D
Clerk of the Superior Court
APR 0 5 2006
By: NORMA TAQUINO, Deputy

THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF SAN DIEGO

IN THE MATTER OF THE APPLICATION OF: ) HC 17095 – 2nd Petition
) 
) CR 66202
EUGENE ALVIN REAMS, )
) ORDER DENYING PETITION FOR
) WRIT OF HABEAS CORPUS
Petitioner. )
)
)

AFTER REVIEWING THE PETITION FOR WRIT OF HABEAS CORPUS AND THE COURT FILE IN THE ABOVE-REFERENCED MATTER, THE COURT FINDS AS FOLLOWS:

In 1984, Petitioner was convicted of multiple counts of kidnapping for the purpose of robbery, robbery, assault with a deadly weapon, and auto theft. Petitioner had two accomplices and the crimes were perpetrated with the use of loaded firearms. Petitioner was sentenced to two concurrent indeterminate terms of 7 years to life, and a determinate term of 7 years, 8 months.

On July 17, 2002, Petitioner filed his first petition for writ of habeas corpus in this Court, challenging the Board of Prison Term's ("BPT") June 26, 2001 decision to deny parole. This petition was denied on August 6, 2002.

Petitioner filed the instant second petition for writ of habeas corpus in this Court on February 15, 2006, challenging the May 13, 2005 decision of the California Board of Parole Hearings ("BPH" or "Board") finding him unsuitable for parole. Petitioner argues the Board's decision to deny parole

-1-

was arbitrary and capricious because it was not supported by any evidence. Petitioner also argues the Board violated his rights by basing its denial of parole on the commitment offense.

The Petition is denied for the following reasons.

Every petitioner must set forth a *prima facie* statement of facts which would entitle him to habeas corpus relief under existing law. (*In re Bower* (1985) 38 Cal.3d 865, 872.) Vague or conclusory allegations do not warrant habeas relief. (*People v. Duvall* (1995) 9 Cal.4th 464, 474.) The petitioner bears the burden of proving the facts upon which he bases his claim for relief. (*In re Riddle* (1962) 57 Cal.2d 848, 852.) The petition should include copies of reasonably available documentary evidence in support of claims, including pertinent portions of hearing transcripts and affidavits or declarations. (*People v. Duvall, supra*, 9 Cal.4th at 474.) A petitioner's unsubstantiated, self-serving statements do not provide a sufficient basis upon which to prove his claims. (*In re Alvernaz* (1992) 2 Cal.4th 924, 945.)

Petitioner has not met this burden.

**Overview of parole suitability standards:**

By statute, when determining suitability for parole, the parole board "shall normally set a parole release date" (Pen. Code § 3041(a)) "unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of a current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual" (Pen. Code § 3041(b)). The state Legislature has given the Board of Prison Terms ("BPT") the power to establish the rules and regulations regarding release on parole. (Pen. Code § 3052.) The BPT regulations require a panel determining parole suitability for a life prisoner to find the prisoner unsuitable for parole if, in the judgment of the panel, the prisoner will pose an unreasonable risk of danger to society if released from prison. (California Code of Regulations, Title 15 [hereafter 15 C.C.R.] §§ 2281(a), 2402(a).) The BPT should consider all relevant, reliable information available to it, including the prisoner's social history, past and present mental state, criminal history, commitment offenses, behavior before, during and after the crime, attitudes toward the crime, and any other information that bears on the prisoner's suitability for release. (15 C.C.R. §§ 2281(b), 2402(b).)

The BPT has also set forth general factors that tend to show suitability and unsuitability for parole. (15 C.C.R. §§ 2281(c)-(d), 2402(c)-(d).) The following are the factors tending to show *unsuitability* for parole that the parole board should consider:

> (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
> (C) The victim was abused, defiled or mutilated during or after the offense.
> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
> (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
> (3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.
> (4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.
> (5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.
> (6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

(15 C.C.R. § 2402(c).) The following are the factors tending to show *suitability* for parole that the parole board should consider:

> (1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.
> (2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.
> (3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.
> (4) Motivation for Crime. The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.
> (5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.
> (6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.
> (7) Age. The prisoner's present age reduces the probability of recidivism.
> (8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.
> (9) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.

(15 C.C.R. § 2402(d)).

The precise manner in which these specified factors are considered and balanced lies within the broad discretion of the BPT, but any decision to deny parole cannot be arbitrary or capricious. (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 656-657, 677 (*Rosenkrantz*).) Thus, the standard is that a life prisoner such as Petitioner should be granted parole unless the BPT finds, in the exercise of its broad discretion, the prisoner is unsuitable for parole in light of the circumstances specified by statute and by regulation. (See *Rosenkrantz, supra*, 29 Cal.4th at 654-655.) The overriding factor in determining whether a prisoner is suitable for parole is public safety. (Pen. Code § 3041; 15 C.C.R. § 2402(a); *In re Dannenberg* (2005) 34 Cal.4th 1061, 1084 (*Dannenberg*); *In re Scott* (2005) 133 Cal.App.4th 573, 591 (*Scott*).)

Judicial review of the BPH's decision whether a prisoner is suitable for parole is limited to a determination of whether the factual basis for the decision is supported by some evidence in the record presented to the parole board that has some indicia of reliability. (*Rosenkrantz, supra*, 29 Cal.4th at 667; *Scott, supra*, 133 Cal.App.4th at 590-591.) This standard of review requires only a "modicum of evidence." (*Rosenkrantz, supra*, 29 Cal.4th at 677.) It is within the BPH's discretion to decide how to resolve conflicts in the evidence and to decide how much weight to give each factor. (*Id.* at 656, 677.) "It is irrelevant that a court might determine that evidence in the record tending to establish suitability for parole far outweighs evidence demonstrating unsuitability for parole." (*Id.* at 677.) As long as the BPH's decision reflects individualized consideration of the specified criteria and legal standards, and is not arbitrary or capricious, the court's review is limited to ascertaining whether there is some evidence in the record that supports the decision. (*Id.*)

**Petitioner's claims on habeas corpus:**

Petitioner argues he was deprived of his constitutionally protected liberty interest in parole because there is no evidence to support the Board's decision denying him parole and because the Board's decision was based solely on the commitment offense. These claims are without merit.

The federal courts indeed have found the language of Penal Code § 3041 creates a liberty interest in release on parole, which is protected by the procedural safeguards of the due process clause. (*Biggs v. Terhune* (9th Cir. 2003) 334 F.3d 610, 614; *McQuillion v. Duncan* (9th Cir. 2002) 306 F.3d. 895, 902-903; see also, *Rosenkrantz, supra*, 29 Cal.4th at 653.) However, the California

Supreme Court has recently found that whether a prisoner is suitable for parole trumps the prisoner's expectancy of a set parole date. (*Dannenberg, supra,* 34 Cal.4th at 1070-1071 ["The statutory scheme, viewed as a whole, thus clearly elevates a life prisoner's individual suitability for parole above the inmate's expectancy in early setting of a fixed and "uniform" parole date."]) Thus, there is no violation of a prisoner's liberty interest if the parole board properly denied parole.

A decision to deny parole can be based on the nature of the prisoner's underlying offense alone, as long as the parole board has given due consideration to all applicable factors regarding suitability for parole (*Rosenkrantz, supra,* 29 Cal.4th at 677, 682-683; see also, *Scott, supra,* 133 Cal.App.4th at 594-595), and the circumstances of the commitment offense reasonably could be considered more aggravated or more violent than the minimum necessary to sustain a conviction for that offense (*Rosenkrantz, supra,* 29 Cal.4th at pp. 678, 683; see also, *Dannenberg, supra,* 34 Cal.4th at 1098.)

The parole board in this case did not rely solely on Petitioner's commitment offense in denying him parole. The BPH gave due consideration to all the applicable factors regarding suitability for parole as set forth in 15 C.C.R. §2402(c), (d). First, the BPH considered the underlying commitment offense. Petitioner was involved in a crime spree that resulted in multiple car thefts, robberies, and assaults, totaling 27 counts, and involving 19 victims. (Petition, Exh. A at 72:5-9). The Board found that multiple victims were attacked, and that the offenses were committed in an especially cruel and callous manner (15 C.C.R. §2402(c)(1); Petition, Exh. A at 71:17-22). There were 19 victims who were attacked, and 14 of these victims were bound and gagged. The offense was carried out in a dispassionate and calculated manner in that these crimes were pre-planned. (15 C.C.R. §2402(c)(1)(B); Exh. A at 71:22-72:1). The motive for the crimes was very trivial in relation to the offenses in that the offenses were committed strictly for material gains. (15 C.C.R. §2402(c)(1)(E); Exh. A at 72:2-4).

The Board also considered Petitioner's previous criminal record and social history. (15 C.C.R. §2402(c)(2), (3)). Petitioner has a minimal criminal history, and a stable social history. (Petitioner, Exh. A at 72:11-22).

1  The Board also considered Petitioner's institutional behavior. (15 C.C.R. §2402(c)(6)). The Board noted Petitioner had received two 115's since being incarcerated, the last in 1997. (Petition, Exh. A at 72:22-24). The BPH also noted Petitioner has programmed in a steady manner while incarcerated, and commended Petitioner on his participation in work assignments and vocational and self-help programs. (Exh. A at 73:9-74:4).

The Board also considered psychological factors. (15 C.C.R. §2402(c)(5)). The BPH reviewed Petitioner's psychological report from July 15, 2004, and found it to be supportive of parole. (Petition, Exh. A at 72:25-73:2).

The Board next considered Petitioner's parole plans. (15 C.C.R. §2402(d)(8)). The BPH noted Petitioner petitioner's plans appeared to be in order and that he had support from his family. (Petition, Exh. A at 73:2-4).

The Board also reviewed the 3042 Notice responses, which indicate an opposition to a finding of parole suitability, specifically from the San Diego District Attorney's Office. (Petition, Exh. A at 73:4-9).

After weighing the above factors, the BPH determined the positive aspects did not outweigh the unsuitability for parole, and denied parole for one year. The Board stated:

> It was really my intent to come in here today and to go through absolutely every one of the crimes and talk with them about – talk with you about them. And you cut me off. . . . You said you didn't want to talk about them. You'd talked about them. Everything you had to say has been said. (Petition, Exh. A at 74:11-19).
>
> . . .
>
> And so I just have to tell you that when a Panel is ready to give you a date, in order to send it forward to Decision Review and then for it to go to the Governor's Office, we have to show that the crime was thoroughly discussed and acknowledged and that we have a good understanding of your acceptance of responsibility and how you feel about it and consideration given to the impact on the victims and everything. And I, quite frankly, didn't feel I had a chance to do that today. (Petition, Exh. A at 75:10-20).

The Board also recommended to Petitioner that he make a list of all of his self-help classes and vocational classes and assignments, as well as create a resume, so that he could be prepared to present it to the next Panel at his next hearing. (Petition, Exh. A at 75:21-76:12).

1  Based on the above, there is "some evidence" in the record to support the Board's finding that Petitioner is unsuitable for parole. This Court finds no abuse of the Board's discretion is apparent in this case.

Therefore, the petition for writ of habeas corpus is DENIED, in its entirety.

A copy of this order shall be served upon 1) Petitioner; and 2) the Office of the San Diego County District Attorney (Appellate Division).

IT IS SO ORDERED.

DATED: April 5, 2006

_____
ROBERT F. O'NEILL
JUDGE OF THE SUPERIOR COURT

I hereby certify that the foregoing instrument is a full, true & correct copy of the original on file in this office, that said document has not been revoked, annulled or set aside, and it is in full force and effect.

Attest: APR 5 2006 @ 4PM
_____
Clerk of the Superior Court of the State of California, in and for the County of San Diego
By_____ Deputy