# EXHIBIT 8
# Part 1 of 5

MC-275

Name    EUGENE ALVIN REAMS

Address    P.O. Box 689 / C-307-U

    Soledad, CA. 93960-0689

COPY

REC'D CLS DOCKETING

F I L E D
Stephen M. Kelly, Clerk
SEP -7 2006
Court of Appeal Fourth District

CDC or ID Number    C-90508

## COURT OF APPEAL OF CALIFORNIA

## FOURTH APPELLATE, DIVISION ONE
### (Court)

EUGENE ALVIN REAMS

Petitioner

vs.

A. KANE, WARDEN, A. SWARTZENEGGER,

Respondent    GOVERNOR

**PETITION FOR WRIT OF HABEAS CORPUS**

No.    D 0 4 9 3 4 8

*(To be supplied by the Clerk of the Court)*

## INSTRUCTIONS — READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. January 1, 1999]

PETITION FOR WRIT OF HABEAS CORPUS

WEST GROUP

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(h)

This petition concerns:

- [ ] A conviction
- [ ] A sentence
- [ ] Jail or prison conditions
- [ ] Parole
- [ ] Credits
- [ ] Prison discipline
- [X] Other (specify): Erroneous finding of unsuitability for parole.

1. Your name: Eugene Alvin Reams

2. Where are you incarcerated? Correctional Training facility - Soledad State Prison

3. Why are you in custody? [X] Criminal Conviction [ ] Civil Commitment

Answer subdivisions a. through i. to the best of your ability.

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

Kidnap for the purpose of robbery.

b. Penal or other code sections: 209(b)

c. Name and location of sentencing or committing court: San Diego Superior Court, San Diego, Ca.

d. Case number: CR 66202

e. Date convicted or committed: 4-18-84

f. Date sentenced: 5-31-84

g. Length of sentence: Life w/possibility of parole + 10 years, 8 months.

h. When do you expect to be released? As yet determined.

i. Were you represented by counsel in the trial court? [X] Yes. [ ] No. If yes, state the attorney's name and address:

Robert Bourne, ATtorney at Law, 600 B Street, Suite 2000, San Diego, CA. 92101

4. What was the LAST plea you entered? (check one)

[X] Not guilty [ ] Guilty [ ] Nolo Contendere [ ] Other:

5. If you pleaded not guilty, what kind of trial did you have?

[X] Jury [ ] Judge without a jury [ ] Submitted on transcript [ ] Awaiting trial

6. GROUNDS FOR RELIEF

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

See attached

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

See attached

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

See attached

8. Did you appeal from the conviction, sentence, or commitment? [X] Yes. [ ] No. If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):
Court of Appeal, Fourth Appellate District

b. Result: Judgement affirmed    c. Date of decision: 11-25-85

d. Case number or citation of opinion, if known: D002092

e. Issues raised: (1) No evidence to support Kidnap for robbery.

(2) _____

(3) _____

f. Were you represented by counsel on appeal? [X] Yes. [ ] No. If yes, state the attorney's name and address, if known:
Handy Horiye, Attorney at Law, 2420 University Ave., San Diego, CA. 92104

9. Did you seek review in the California Supreme Court? [ ] Yes. [X] No. If yes, give the following information:

a. Result: _____    b. Date of decision: _____

c. Case number or citation of opinion, if known: _____

d. Issues raised: (1) _____

(2) _____

(3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:
This petition concerns legal claims occurring subsequent to the record of appeal.

11. Administrative Review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:
There are no administrative remedies.

_____

_____

_____

_____

_____

_____

_____

b. Did you seek the highest level of administrative review available? [ ] Yes. [X] No.
*Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or **issue** in any court?  ☒ Yes. If yes, continue with number 13.  ☐ No. If no, skip to number 15.

13. a. (1) Name of court:  Superior Court of San Diego

     (2) Nature of proceeding (for example, "habeas corpus petition"):  habeas corpus petition

     (3) Issues raised: (a)  Violation of Federal and State due process rights.

         (b)  Violation of Federal and State equal protection rights.

     (4) Result (Attach order or explain why unavailable):  Denial - See attached as exhibit "D".

     (5) Date of decision:  April 5, 2006

   b. (1) Name of court:

      (2) Nature of proceeding:

      (3) Issues raised: (a)

          (b)

      (4) Result (Attach order or explain why unavailable):

      (5) Date of decision:

   c.  For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:
    N/A

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)
    N/A

16. Are you presently represented by counsel?  ☐ Yes.  ☒ No.  If yes, state the attorney's name and address, if known:

17. Do you have any petition, appeal, or other matter pending in any court?  ☐ Yes.  ☒ No.  If yes, explain:

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:
    This is the appropriate jurisdiction for the instant proceeding.

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: 8-29-06

▶ *Eugene Alvin Reams*
(SIGNATURE OF PETITIONER)

1

2

3

4

5

6

7

8               COURT OF APPEAL OF CALIFORNIA

9             FOURTH APPELLATE, DIVISION ONE

10

11

12   In re EUGENE ALVIN REAMS,          )  Case No. _____
                                        )
13        Petitioner,                   )
                                        )
14   On Habeas Corpus.                  )
     _____)

15

16               **PETITION FOR WRIT OF HABEAS CORPUS**

17

18

19

20

21

22

23

24                          EUGENE ALVIN REAMS
                            C-90508, C-307U
25                          P.O. Box 689
                            Soledad, CA.  93960-0689
26
                            In Propria Persona
27

28

                              - 1 -

**Superior Court Denial**

Petitioner appealed his 6th subsequent parole consideration hearing, held on May 13, 2005, at which time he was denied parole for one year.

On September 10, 2005, the decision was final.

On January 17, 2006, Petitioner filed a writ of habeas corpus.

On April 5, 2006, Petitioner's writ of habeas corpus was denied (Exh. D). Upon review of the denial, Petitioner found the denial to be lacking in several areas.

First, the denial states, "The parole board in this case did not rely solely on Petitioner's commitment offense in denying him parole." (Exh. D, p. 5, ln 13-14.) While this is true, this statement is a ruse as the <u>only</u> other reason was Petitioner had two CDC-115's, his last in 1997. (Exh. D, p. 6, ln 1-2.) Every other reason quoted in the denial was positive, with the exception of the D.A.'s opposition. Petitioner claims this is a ruse, as the two CDC-115's fails to support Petitioner is an unreasonable risk or danger to society.

Second, the Court failed to address Petitioner second claim (violation of equal protection).

Third, the Court failed to address how Yellen's (Codefendant) due process violation does not apply to Petitioner. On June 9, 2004, United States Eastern District Court stated, "Under these circumstances, the continued reliance on these factors at the 1999 hearing violated due process." (Exh. C, p. 13, ln 4-5.) Petitioner submitted Yellen's decision, and requested the Superior Court to take judicial notice. (HCP, p. 11, ln 13-19.)

On May 18, 2006, Petitioner filed a "Motion to Reconsider." (Exh. E.)

On June 7, 2006, the Court denied Petitioner's Motion to Reconsider (Exh. F.).

1    The Court addressed Petitioner's claim of an equal protection violation,

2    in just two lines.  "Because suitability for release on parole is based on an

3    evaluation of how the factors apply to each prisoner, individually,

4    Petitioner's argument that two of his co-defendants were granted parole, is

5    not a violation of his equal protection rights."  (Exh. F, p. 3, ln 5-7.)

6    Petitioner's individual consideration does not preclude a finding of a

7    violation of equal protection, as stated by the Superior Court.  The use of

8    the same factors (commitment offense) to find Petitioner unsuitable, and his

9    codefendants suitable, is what makes the panel's finding a violation of equal

10    protection.  This means the previous Boards has found the facts of the very

11    same offense were not aggravated to a degree to justify parole denial.  As

12    Petitioner took no action independent from his crime partners and did not

13    impose any harm or suffering upon the victims independent of his crime

14    partners, the decision of this parole board panel conflicts with decisions

15    made by two other panels on the exact same criminal offense.  The

16    individualized consideration does not affect the equal protection argument.

17    The Superior Court refuses to review or address how the exact circumstances

18    of the commitment offense make Petitioner unsuitable, and his codefendants

19    suitable.

20    Petitioner does not assert that he should be found suitable for parole,

21    he asserts that it is a violation of equal protection to use the commitment

22    offense as a reason for denial.  Frankly, the Court's reasoning falls short

23    as it fails (along with the Board) to address how Petitioner's offense

24    differs from his codefendants, in such a way, as to warrant a denial of

25    suitability.

26    The Eastern District Court addressed the equal protection claim in

27    Yellen's decision.  The Court stated, "In order to prevail on this claim,

28    petitioner must demonstrate that similarly situated prisoners have been

released on parole sooner than him.   See McQuery v. Blodett, 924 F.2d 829,

835 (9th Cir. 1991).   In other words, petitioner must demonstrate that

prisoners convicted of two counts of kidnapping for robbery based on similar

circumstances have been released on parole.   Petitioner has not done this."

(Exh. C, p. 21, ln 23 to p. 22, ln 1.)

The Easter District Court denied Yellen's claim because he failed to

demonstrate prisoners convicted of two counts of kidnapping for robbery based

on similar circumstances have been released on parole.   Petitioner has done

so.   Common sense would establish that Petitioner has an equal protection

argument, as defined by the Eastern District Court.

The Board panel should be barred from using the commitment offense, as

this particular offense has been deemed suitable by two other board panels,

and it has been defined as an equal protection violation.   Petitioner

understands that this is a very unique use of an equal protection claim [as

Petitioner is not only similarly situated, but exactly situated]

nevertheless, a valid one.

Dated:   ~~September~~ August 29, 2006                 Respectfully Submitted,


                                          *Eugene Alvin Reams*
                                          EUGENE ALVIN REAMS

# INTRODUCTION

1

2    Petitioner, with two codefendants, Harold Taylor and Michael Yellen, were

3    convicted of various crimes occurring during a November 1983 crime spree, including

4    conspiracy to rob Neiman Marcus, grand theft auto, kidnapping to commit robbery,

5    robbery, assault with firearms, and burglary, with various findings of personally

6    using and being armed with firearms.

7    Petitioner received a determinate term of 10 years and 8 months (determinate

8    term was consecutive to the life term) plus two sentences of 7 years to life

9    (concurrent) for all his offenses.

10    Petitioner completed his determinate term and began serving his term-to-life

11    sentence in August 1989.  His Minimum Eligible Parole Date (MEDP) was 8/12/96.

12    On 8/22/95, Petitioner appeared before the Board of Prison Terms (BPT) for his

13    initial parole consideration hearing, pursuant to Penal Code §3041.  Petitioner was

14    denied parole for a period of 2 years.

15    On 8/19/97, Petitioner appeared for a subsequent parole hearing and was denied

16    parole for 1 year.

17    On 9/16/98, Petitioner appeared for his 2nd subsequent parole hearing and was

18    denied parole for a period of 2 years.

19    On 6/26/01, Petitioner appeared for his 3rd subsequent parole hearing and was

20    denied parole for 1 year.  [The 9 month delay was due to BPT understaffing.]

21    On 6/03/02, Petitioner appeared for his 4th subsequent parole hearing and was

22    denied 1 year.

23    On 8/06/03, Petitioner appeared for his 5th subsequent parole hearing and was

24    denied parole for 1 year.

25    On 5/13/05, Petitioner appeared for his 6th subsequent parole hearing and was

26    denied parole for 1 year. [The 9 month delay was due to the need for a current

27    psych report.]

28    It is this hearing that Petitioner now appeals.

1                                    FACTS

2       At about 6 p.m. on November 5, 1983, Reams answered an advertisement

3   placed by Michael Terizbachian to sell his Porshe.  Terizabachian took Reams

4   for a test drive.  At a parking lot, Reams got into the driver side, locked

5   Terzibachian out of the car, and drove away.

6       Sometime the same evening, Yellow showed Terzibachian's Porshe to Thomas

7   Burtrum.  Burtrum contacted Terzibachian at about 4 a.m. and told him where

8   his car was.  When Terzibachian recovered his car, one small item was broken

9   and it had a dead battery.

10      At about 3 p.m. on November 18, 1983, Reams and Yellen went to a Porshe

11  dealership, took a yellow Porshce with a black top for a test drive, with

12  the salesman, Alan Silverman.  At a freeway exit Yellen got into the driver's

13  seat, locked Silverman out of the car, and drove away.

14      At about 2 a.m. on November 19, 1983, Calvin Nixon, and Chairds, security

15  guards for ADT Security, [Reams, Taylor and Yellen were formerly employed

16  by ADT] investigated a reported break-in at the Kelco building.  AT about

17  3.30 am.m, Chairds was in the back of the building and Nixon was in the front,

18  waiting for a back-up security guard, harry Fournier.  A yellow Porsche parked

19  near Nixon's car, Reams got out of the car with a handgun and told Nixon

20  to freeze, and Taylor got out with a shotgun, put a shell in the chamber,

21  and told Nixon to turn around.  They handcuffed Nixon, pushed him face down

22  to the ground and took his flashlight and gun.  Nixon heard the defendants

23  open the trunk of his car, and tamper with a box containing two to three

24  hundred keys to builidings for which ADT provided security.  Nixon was placed

25  face down in the back of his car, wedging his face between the back and front

26  seats.  Reams and Taylor got in his car and drove away, followed by the yellow

27  Porsche.  Fournier saw the two cars leaving.  Nixon was driven around

28  recklessly for about 25 minutes.  His car was driven fast, taking a lot of

corners, causing Nixon to be bounced around. The car stopped in the parking lot of the Industrial Indemnity Building, about five to seven miles from the Kelco Building. The yellow Porsche was already there. Nixon was handcuffed to a gas meter pipe. Nixon heard the men return to his car and remove the key box. Nixon's keybag with credit cards and keys to the units belonging to ADT, which had been on the front seat, and the box of keys which had been in the trunk, were missing from Nixon's car. The keys in the keybox were to deactivate the alarm systems of ADT's clients. Although ADT had a contract with neiman-Marcus, the keys to Neiman-Marcus were not included.

At about 9 p.m. on November 19, Reams and Taylor went to an auto dealership and took a blue van for a test drive, with salesman, Mario Castenada, driving. Taylor took the wheel. Castenada, suspicious of the men, brought a pager to contact the dealership if there was trouble. When Taylor began driving, Reams took the pager. Castenada told Taylor to go back to the dealership because the van was low on gasoline. Taylor turned in the opposite direction. Reams pointed a gun at Castenada and ordered him to lie on the floor. Castenada saw a light colored Porsche with a black top following them. Reams, at gunpoint, got $20 from Castenada for gas. Later Reams asked Castenada for more money, and Castenada gave him the rest of his $180 to $190 and his diamond ring. Castenada was left out on the center divider of Interstate 5, 6.1 miles from the dealership, after being with the men for a total of 20 to 30 minutes. He saw the Porsche pull in front of the van and saw both vehicles leave. In the early morning hours of November 20, the police spotted and unsuccessfully pursued the yellow Porsche in a high speed chase.

At about noon on November 20, Yellen and Taylor, driving the yellow Porsche with a black roof, went to Terzibachian's residence to see the Porsche he was again advertising for sale. They asked Terzibachian how the alarm system worked on the car. They were unable to test drive the car because the battery

1  was dead.  At about 6 p.m. the same day, Yellen, Taylor and Reams returned
2  to Terzibachian's residence, which was an apartment complex protected by
3  a locked security gate.  Yellen had called Terzibachian and told him he was
4  back to see the car with his father, who would be paying for it.  Rebecca
5  Terzibachain, Michael Terzibachian's wife, went downstairs to the lobby area
6  and heard them enter the complex.  She followed them down the hallway until
7  they saw her.  She was suspicious, and told a neighbor, Joseph Deuer, to
8  call the police.  Deuer followed her out of the laundry room.  By this time,
9  Michael was also downstairs.  He recognized Reams as the man who had stolen
10 his car on November 5, and told the men he would not show them the car.
11 As the men turned to leave, Michael said. "Wait a minute, I want to talk
12 to you."  The three men immediately pulled out guns and pointed them at
13 Michael.  Deuer, who was behind Michael, saw the guns pointed in his direction
14 and stood still.  Rebecca did not yet see the guns.  Rebecca had her hands
15 on the security gate.  Yellen was beside her, and as he opened the gate she
16 slipped and fell.  Yellen pointed the gun at her head.  Reams and Taylor
17 were running sideways toward the security gate, looking back at Michael and
18 Deuer, holding their guns out.  Reams and Taylor never pointed their guns
19 directly at Rebecca.  All three men passed her, exiting through the doorway
20 size security gate.  The men drove away in a yellow porsche and an older
21 american car.  At about 7.30 p.m. on the same day, the yellow Porsche was
22 located on the second level parking lot in Fashion Valley shopping center.
23 There were not keys in the ignition and the car was towed to the police
24 station.

25     At about 7 a.m. on November 21, 1983, Taylor and reams entered and robbed
26 Neiman-Marcus and its employees at gunpoint.  Taylor pointed a gun at Kelly
27 Haliburton, assistant security manager at Neiman-Marcus.  The 13 employees
28 present or arriving during the course of the robbery were brought in to the

- 5 -

1   security office in the store, their eyes and mouths taped, their hands tied
2   behind their backs, and made to kneel, sit, or lie down.  One employee
3   attempted to take the tape off her face, and was told by one of the appellants
4   that he would shoot her if she did not "cool it."  Personal property was taken
5   from six employees.

6       The evening of the Neiman-Marcus heist, appellants rented a room in the
7   Best Western Motel in San Ysidro, in Taylor's name.  That evening, at the
8   motel, Yellen, Reams, Taylor, and Taylor's girlfriend saw a television news
9   broadcast, and heard the police were linking a K-Mart robbery and the Neiman-
10  Marcus robbery together, which prompted Yellen to say they "had gotten away
11  with it."  Earlier, Yellen, who had been employed as a security guard at
12  Neiman-Marcus but had not shown up for a few days, called a coworker, Albert
13  Arena.  Yellen told Arena he had heard about the robbery on the news.  He
14  told Arena he was at the motel, but would not say where.  Arena told Yellen
15  he might be in trouble and he should get an attorney.

16      Between 8.30 and 9 p.m. that same evening, two of the appellants parked
17  the blue van in the parking lot of an apartment building about one-half mile
18  from the Best Western Motel.  The apartment manager told them to move the
19  van, but they said they were visiting someone and would move it shortly.
20  They did not enter the apartment complex, but walked toward the street.
21  The next morning the van was still at the apartment building and the police
22  impounded it.  They found fingerprints belonging to Reams and Yellen.

23      The police found Castenada's pager; Nixon's keys, gun, flashlight and
24  credit cards; two Porsche keys; the van registration papers; guns, bullets
25  and speed loaders; Neiman-Marcus' keys, large bag, power packs, fur jackets,
26  handcuffs, walkie talkies, and $2,100 in the motel room.  At the police
27  station, Castenada's diamond ring was found on Taylor.  A full description
28  of Petitioner's acts are described in Petitioner's Probation report.

VERDICTS

All three defendants [Harold Taylor, Michael Yellen and Eugene Reams] were convicted as follows. Count 1; conspiring to rob Neiman-Marcus (Penal Code § 182, subd. 1). All statutory references are to the Penal Code. The overt acts alleged in the conspiracy were stealing Silverman's Porsche, breaking in at Kelco Industries to lure ADT security personnel, kidnapping and robbing Nixon, stealing Castenada's van, posing as interested buyers of an attempting to steal Terzibachian's Porsche. Counts 4 and 7; kidnappings to rob Nixon and Castenada (§ 209). Counts 5 and 8; robbing Nixon and Castenada (§ 211). Counts 6 and 9; unlawfully taking Nixon's and Castenada's vehicle (Veh. Code § 10851). Count 10; attempted grand theft auto (Terzibachian's car, § 487, subd. 3 and 664). Counts 11, 12, and 13; assault with firearms on Michael and Rebecca Terzibachian and Joseph Deuer (§ 245, subd. (a)(2)). Counts 20 through 26; assaulting Neiman-Marcus employees (§ 245, subd. (a)(2).) Count 27; burglarizing Neiman-Marcus (§ 450). Reams and Yellen were convicted in Count 3 of grand theft of Silverman's Porsche (§ 487, subd. 3). All three defendants were found to have personally used (§ 12022.5) and/or been armed with (§ 12022, subd. (a)) firearms during many of the crimes. Also, Petitioner and Yellen pled guilty, in a separate case, to additional grand theft auto charges. These additional auto thefts occurred prior to the five day crime spree.

SENTENCE

Petitioner, and his codefendants, were sentenced to concurrent life terms with the possibility of parole on counts 4 and 7, the kidnapping to commit robbery. Yellen was given a one-year consecutive enhancement for being armed with a firearm on the life term. The life term and enhancement were ordered to run consecutive to the following determinate terms; Petitioner, and his codefendants were given three years plus a two-year enhancement for personally using a firearm on count 11, the principal term (the assault with firearms

1   on Michael Terzibachian).  Petitioner and Yellen were given 8 months on count

2   3 (grand theft of Silverman's auto).  All defendants were given one year on

3   count 1 (conspiracy to rob Neiman-Marcus).  The total determinate term for

4   Yellen was 8 years, 8 months, for Taylor, 9 years, 8 months, and for Petitioner,

5   10 years, 8 months.  For the remaining counts, concurrent terms or stayed

6   sentences were imposed pursuant to section 654.

### May 13, 2005, Board Hearing

7

8     Petitioner has appeared before the Board of Prison Terms [hereinafter BPT]

9   a total of seven times.  His latest hearing was on May 13, 2005, at which

10  time he was again denied parole, for one year.  (Exh. A, p. 74, ln 6-7)  The

11  BPT panel concluded that Petitioner "... would pose an unreasonable risk of

12  danger to society or a threat to public safety if released from prison."

13  (Exh. A, p. 71, p. 15-17)  The BPT panel supported their conclusion by stating,

14  "The offenses were carried out with a great amount of callous disregard for

15  what the victims were going through.  There were about 19 victims who were

16  attacked.  There were 27 counts of offenses.  And 14 of the victims were bound

17  and gagged.  These crimes were carried out in a very calculated manner in

18  that they were all pre-planned.  And the victims were abused by being bound

19  and gagged and the offenses were carried out in a manner that showed a total

20  disregard for the fear of the victims at the time.  And the motive for the

21  crimes were very trivial in relation to the offenses in that these were strictly

22  for material gains and selfish reasons.  These conclusions are drawn from

23  a Statement of Facts, that the prisoner and his crime partner were responsible

24  for multiple car thefts, robberies and assaults of 27 counts with 19 victims.

25  (Exh. A. p. 71, ln 17 through p. 72, ln 9)  The panel also concluded that

26  Petitioner had a minimal criminal history (Exh. A. p. 72, ln 11-12), a stable

27  social history (Exh. A. p. 72, ln 17-19); the psychiatric/psychological report

28  dated 7/15/04, by Dr. Stack appeared to be supportive and is a very adequate

- 8 -

1   report (Exh. A. p. 72, ln 26 through p. 73, ln 1-2); and that Petitioner's

2   parole plans appear to be in order and he has good support from his family.

3   (Exh. A. p. 73, ln 2-4)

4

### THE BOARD VIOLATED PETITIONER'S STATE AND FEDERAL DUE PROCESS RIGHTS AND ACTED ARBITRARILY AND CAPRICIOUSLY BY DENYING PETITIONER PAROLE WITHOUT ANY SUPPORTING EVIDENCE

5

6

7        It is now a well-established principle that constitutional protections

8   attach to an inmate's interest in parole. "California's parole scheme gives

9   rise to a cognizable liberty interest in release on parole. The scheme

10  'creates a presumption that parole release will be granted' unless the

11  statutorily defined determinations are made." McQuillion v Duncan, 306 F.3d

12  896, 902.

13       The Board's decision must be based on some "evidence" and that "evidence"

14  can not be merely evidence that Petitioner committed a crime, but must indicate

15  that Petitioner would be an unreasonable threat of future dangerousness if

16  released in order to support a Board's decision to deny parole. (In re

17  Ramirez, 94 Cal.App.4th 549; cited with approval in In re Rosenkrantz, 29

18  Cal.4th 616). The California Supreme Court in In re Rosenkrantz, Supra,

19  at 658, stated that the "some evidence" review means that;

20       [T]he judicial branch is authorized to review the factual basis
         of a decision of the Board denying parole in order to ensure
21       that the decision comports with the requirements of due process
         of law, but that in conducting such a review, the court may
22       inquire only whether some evidence in the record before the
         Board supports the decision to deny parole, based upon the
23       factors specified by statute and regulation.

24       Petitioner asserts that there was no evidence to support the BPT panel's

25  finding that Petitioner poses an unreasonable risk of danger to society or

26  a threat to public safety if released from prison. The BPT panel's primary

27  support for their finding was Petitioner's commitment offense. (Exh. A.

28  p. 71, ln 15 through P. 72, ln 9).

- 9 -

1    Petitioner's commitment offense can not be considered "some evidence" to

2    support the BPT's Conclusion that Petitioner is an unreasonable risk for the

3    following reason;

4    **A.  Positive Psychological Evaluations**

5    All of Petitioner's psych evaluations have rated his level of threat to

6    society as average or below average.  These psych reports are authored by

7    accredited professionals.  Petitioner's latest psych evaluation was read into

8    the record, and addressed Petitioner's level of threat to society; "In the area

9    of assessment of dangerousness, the Doctor writes, in part, inmate Reams'

10   violence potential within a controlled setting is considered to be well below

11   average relative to this Level Two inmate population and if released to the

12   community, his violence potential is estimated to be no greater than that of

13   the average citizen in the community."  (Exh. A. p. 45, ln 15-22)

14   The BPT panel made a finding in direct contradiction to Petitioner's

15   numerous positive psych evaluation(s), even though the panel acknowledged

16   Petitioner's latest psych evaluation as supportive and very adequate.  (Exh. A.

17   p. 72, ln 25 through p. 73, ln 2).  The panel never gave a reason for rejecting

18   the numerous psych evaluation(s) rating Petitioner as a low risk.  The BPT

19   panel, during the hearing, did not have 'good cause' in determining Petitioner

20   is a current danger to society, based on the commitment offense.  The

21   definition of "good cause" is, "A finding by the Board based upon a

22   preponderance of the evidence that there is a factual basis and good reason for

23   the decision made."  [Underline added for emphasis] (California Code of

24   Regulations, Title 15, Division 2, Board of Prison Terms, Chapter 1, General,

25   Article 1, Rules of Construction and definitions, §2000 (b)(50).)  Here, the

26   BPT panel lacks factual basis or good reason for their decision, in clear

27   violation of their own administrative regulations.

28   The Psychologist(s) authoring the pysch evaluation(s) also reviewed the

- 10 -

1  commitment offense but found Petitioner to be a <u>low risk</u>.  The BPT panel

2  (layman in regards to threat assessment) <u>can</u> <u>not</u> overrule an accredited

3  professional opinion(s)/finding(s) without some <u>factual</u> evidence supporting

4  their decision.  This is arbitrary and capricious, and a violation of

5  Petitioner's State and Federal Due Process Rights.

6  **B.  Continued Denials**

7     This hearing was Petitioner's 7th hearing and the 7th time the BPT panel

8  has used Petitioner's commitment offense as the primary reason for denial.  In

9  <u>Biggs v. Terhune</u>, 334 F.3d 910, 917, "A continued reliance in the future of an

10  unchanging factor, the circumstances of the offense and conduct prior to

11  imprisonment runs contrary to the rehabilitative goals espoused by the prison

12  system and could result in a due process violation."

13     This very issue was raised by Petitioner's codefendant.  Petitioner

14  respectfully requests this court to take judicial notice of <u>Yellen v Butler</u>

15  Case No. CIV S-01-2398 MCE GGH P, (Exhibit C).  Yellen was released by the

16  United States Eastern District Court on this very issue.  Judicial notice is

17  properly taken of orders and decisions made by other courts or administrative

18  agencies, see <u>Papai v. Harbor Tug and Barge Co.</u>, 67 F.3d 203, and also Federal

19  Rules of Evidence §201 (a) - (f).  The Eastern District found that continued

20  reliance on unchanging circumstance transforms an offense for which California

21  law provides eligibility for parole into a de facto life imprisonment without

22  the possibility of parole.  The Court concluded, "Under these circumstances,

23  the continued reliance on unchanging factors at the 1999 hearing violated due

24  process." (Exh. C., p. 13, ln 4-5)

25     Petitioner's commitment offense and Yellen's commitment offense are

26  indistinguishable.  In Yellen's case, he was challenging his 3rd suitability

27  hearing, even though he had been denied three (3) additional times.  The Court

28  found that reliance on unchanging factors, **at his 3rd hearing** violated his due

- 11 -

1  process rights.  In Petitioner's case, he has been denied seven (7) times, for

2  the _exact_ same reasons (specifically, the commitment offense).  Therefore,

3  Petitioner asserts his due process rights have been violated.

### THE BOARD VIOLATED PETITIONER'S STATE AND FEDERAL CONSTITUTIONAL EQUAL PROTECTION RIGHTS BY BASING THEIR DENIAL OF PAROLE ON THE COMMITMENT OFFENSE

7    Petitioner denial of parole was based primarily on the commitment

8  offense.  (Exh. A. p. 71-72)  Petitioner asserts that it is a violation of his

9  Equal Protection Rights to continue using the commitment offense when

10 Petitioner's codefendants have been found suitable for the same commitment

11 offense.  The Board stated reason for denial of parole was;

12        "The offenses were carried out with a great amount of callous
          disregard for what the victims were going through.  There were
13        about 19 victims who were attacked.  There were 27 counts of
          offenses.  And 14 of the victims were bound and gagged.  These
14        crimes were carried out in a very calculated manner in that
          they were all pre-planned.  And the victims were abused by
15        being bound and gagged and the offenses were carried out in
          a manner that showed a total disregard for the fear of the
16        victims at the time.  And the motive for the crimes were
          very trivial in relation to the offenses in that these were
17        strictly for material gains and selfish reasons.  These
          conclusions are drawn from a Statement of Facts, that the
18        prisoner and his crime partner were responsible for multiple
          car thefts, robberies and assaults of 27 counts with 19
19        victims.  And they resulted in the accumulation of the
          commitment offense and the current arrest and incarceration.

21    Petitioner, along with his two codefendants (Mike Yellen and Harold

22 Taylor) committed these same exact offenses listed in Petitioner's denial.

23 Yet, Mike Yellen and Harold Taylor have both been found suitable for these

24 same exact set of circumstance; and both have been released.  Harold Taylor

25 was found suitable by the Board on May 18, 2004, (Exh. B) and released on

26 September 15, 2004.  Mike Yellen was released in July of 2004, as a result

27 of the decision attached hereto as Exhibit C.

28    Petitioner _is not_ asserting that he should be released from prison,

- 12 -

1  because his two codefendant's have been released.  Petitioner is asserting that
2  using the commitment offense as the basis for denial violates Equal Protection.
3     The Equal Protection Clause essentially requires that all persons
4  similarly situated be treated alike, and an Equal Protection violation occurs
5  when the government treats someone differently than another who is similarly
6  situated.  Jacobs, Visonsi & Jacobs Co. v City of Lawrence, KS, 927 F-2d 1111
7  (10th Cir. 1991); City of Cleburne v Cleburne Living Center, 473 U.S. 432, 87
8  L.Ed.2d 313, 105 S.Ct. 3249 (1985).
9     Petitioner asserts that it is a violation of Equal Protection to use the
10 same exact set of circumstances (commitment offense) to find one inmate to be a
11 danger to society (and thereby unsuitable), and two other similarly (in this
12 case - exactly) situated inmates to no longer be a threat to society (and
13 thereby suitable).
14    Futhermore, it is clearly established law that, "[T]he gravity of the
15 commitment offense or offense alone may be a sufficient basis for denying a
16 parole application, so long as the Board does not fail to consider all other
17 relevant factors."  (In re Ramirez, supra, 94 Cal.App.4th at p. 569, 114
18 Cal.Rptr.2d 381; accord Rosenkrantsz, supra, 29 Call.4th at p. 660, 677, 128
19 Cal.Rptr.2d 104, Scott I, (2001) 119 Cal.App.4th 871, at p. 891.)  In this
20 case, failure to consider that Petitioner's codefendants had been found
21 suitable for the same commitment offense proves the BPT panel failed to
22 consider all other relevant factors.

23                              CONCLUSION
24    A comparison of Petitioner's denial (Exh. A. p. 71-72) and his
25 codefendant's (Yellen) denial (Exh. C. p. 10, ln 2-8) shows both denials were
26 based on the same basis, i.e., commitment offense.  The Eastern Federal Court
27 found Yellen's denial, based on unchanging factors (at his 3rd hearing)
28 violated his due process rights.  (Exh. C. p. 13, ln 4-5)  The State of

                              - 13 -

1   California denied Yellen's petition at all levels, disregarding the precedent

2   set in Biggs.  Here, the court has the benefit of a case, already decided,

3   showing that a violation of due process, and a violation of equal protection

4   has occurred.

5       Further exacerbating Petitioner's situation [violation of due process

6   and equal protection] is the fact Petitioner is more than five (5) years

7   beyond his release date.  Codefendant Taylor was found suitable and had his

8   term set.  Taylor began his life sentence in January of 1989 and Petitioner

9   began his life sentence in August of 1989, a difference of only six months.

10  Taylor's term was set at 186 months, and his post-conviction credits of sixty

11  (60) months reduced his 'total period of confinement' to 126 months (Exh. B).

12  Taylor's release date should have been July of 1999.  Taylor was nearly five

13  years (four years, 10 months) beyond his release date.  Petitioner is in the

14  same exact situation in the calculation of his term, with the addition of six

15  months.  Petitioner release date would have been January of 2000, making the

16  violation(s) of his rights especially egregious.

17      Petitioner has served beyond his applicable matrix term of 9-11-13 year(s)

18  [California Code of Regulations, Title 15, Section § 2282 (c)], having been in

19  custody for twenty-two (22) years, well beyond his maximum term, without any

20  basis for a determination that he presents an unreasonable risk of danger to

21  society or a threat to public safety.

22      As shown above, the Board violated Petitioner's Federal and State

23  Constitutional rights, under the 5th and 14th Amendments, specifically violating

24  Petitioner's due process and equal protection rights.

25  ///

26  ///

27  ///

28

- 14 -

WHEREFORE, Petitioner prays this Court to do the following;

1.  Issue a writ of habeas corpus compelling Respondent Board to hold
    a new hearing within 60 days and comport with due process, and
    establish that a denial based primarily on the commitment offense
    violates equal protection and/or due process in this case.

2.  Issue an Order to Show Cause compelling Respondent Board to answer
    the claims set forth herein by Petitioner.

3.  Grant any other relief this Court may deem fair and just.

Dated: ~~September~~ *August* 29, 2006                Respectfully Submitted,


                                              *Eugene Alvin Reams*
                                              EUGENE ALVIN REAMS

                                              Petition in Pro Per

EXHIBIT A

SUBSEQUENT PAROLE CONSIDERATION HEARING

STATE OF CALIFORNIA

BOARD OF PRISON TERMS

In the matter of the Life  )
Term Parole Consideration  )       CDC Number C-90508
Hearing of:                )
                           )
EUGENE REAMS               )
_____)



CORRECTIONAL TRAINING FACILITY

SOLEDAD, CALIFORNIA

MAY 13, 2005

12:05 P.M.

PANEL PRESENT:

CAROL DALY, Presiding Commissioner
ROBERT HARMON, Deputy Commissioner

OTHERS PRESENT:

EUGENE REAMS, Inmate
MARY ANN TARDIFF, Attorney for Inmate
RICHARD SACHS, Deputy District Attorney
        Via Videoconference

CORRECTIONS TO THE DECISION HAVE BEEN MADE

_____    No        See Review of Hearing
_____    Yes       Transcript Memorandum

Sandra Triplett          Capitol Electronic Reporting

RECEIVED
JUN 1 4 2005
BY: CTF

ii

## INDEX

|  | Page |
|---|---|
| Proceedings | 1 |
| Case Factors | 13 |
| Pre-Commitment Factors | 17 |
| Post-Commitment Factors | 29 |
| Parole Plans | 48 |
| Closing Statements | 67 |
| Recess | 70 |
| Decision | 71 |
| Adjournment | 78 |
| Transcriber Certification | 79 |

--oOo--

1

1      P R O C E E D I N G S

2          DEPUTY COMMISSIONER HARMON:  On record.

3          PRESIDING COMMISSIONER DALY:  Okay, this is

4      a Subsequent Parole Consideration Hearing on

5      Eugene Reams, CDC number C-90508.  Date of the

6      hearing is 5/13 of '05, and it is 1205 hours.  We

7      are located at Correctional Training Facility at

8      Soledad.  Date received was August 8th of 1984.

9      Life term starts August 11th of 1989, out of the

10     County of San Diego, and the offense is kidnap for

11     robbery with use of a firearm.  Case number

12     CR66202.  Count number four, 209(b) and 12022.5.

13     And the terms are seven years to life with -- plus

14     10 years, four months.  Minimum Eligible Parole

15     Date is August 11th of 1996.  We have an additional

16     offense, robbery, 182/211 out of San Diego.  This

17     is the same case number, count number one.

18     Actually there are multiple offenses and victims

19     in this arrest and I'm going to show all of them

20     as being the same case number out of the County of

21     San Diego.  And so I'll just proceed from there.

22     Grand theft auto, 487.3, count number three.

23     Assault with a deadly weapon, 245(a)(2), count

24     number 11.  Use of a firearm, 12022.5, count

25     number 11 consecutive.  Robbery, 211, count number

26     15 consecutive.  Use of a firearm, 12022.5, count

27     number 15.  Grand theft auto, 10851 of the Vehicle

2

1    Code, count number two.  Stayed offense of

2    robbery, 211, out of count number five.  Grand

3    theft auto, stayed offense, Vehicle Code 10851,

4    count number six.  And kidnap robbery, 209, which

5    was stayed, count number seven.  Use of a firearm,

6    12022.5, count number seven.  Robbery, stayed

7    offense, 211, count number eight.  Grand theft

8    auto, 10851, count number nine was a stayed

9    offense.  Attempt grand theft auto with use of a

10   firearm, 664/487 and 12022.5, counts number ten.

11   And assault with a firearm, 245(a)(2), count

12   number 12.  Another stayed offense, use of a

13   firearm and assault with a firearm, 12022.5 and

14   245(a)(2), count numbers 12 and 13.  And a stayed

15   offense, use of a firearm, 12022.5, count number

16   13.  We have robbery, 211, count number 14, armed

17   with a firearm, 12022(a), count number 14.  We

18   have robbery and armed with a firearm, 211 and

19   12022(a), counts 16 and 17.  Robbery, 211, count

20   number 17.  Use of a firearm on a robbery was a

21   stayed offense, 12022.5, 211, counts number 18.

22   Use of a firearm, a stayed count, 12022.5.  It is

23   count number 19.  Robbery, 211, count number 19.

24   Use of a firearm, 12022.5, count number 20.  And

25   then we have a stayed offense, assault with a

26   firearm, two assaults with a firearm, counts

27   number 21 and 22, 245(a)(2), stayed offense,

3

1   assault with a firearm, count number 23.  That's a

2   245.  A stayed offense, assault with a firearm,

3   245(a)(2), counts number 24.  Assault with a

4   firearm, 245(a)(2), count number 25.  And assault

5   with a firearm, 245(a), count number 13.  It is

6   noted that all of these are the same case number

7   out of San Diego.  Stayed offense, assault with a

8   firearm, 245(a)(2), out of San Diego, count number

9   26.  Stayed offense, a burglary, 459 of the Penal

10  Code, count number 27.  Okay, now we have a new

11  case number out of San Diego.  Auto theft, 10851

12  out of San Diego.  Case number CR66967.  Count

13  number two.  Auto theft, 10851, same case number,

14  66967, count number 17 and auto theft, 10851, same

15  case number of 66967, count number 20.  Okay,

16  Mr. Reams, this hearing is going to be tape-

17  recorded.  And so for the purposes of voice

18  identification, we're going to go around the room

19  to my left.  Each person is going to state a name,

20  spell a last name.  And then after you have

21  spelled your last name, give your CDC number.

22  Okay.

23          **INMATE REAMS:**  Yes, Ma'am.

24          **PRESIDING COMMISSIONER DALY:**  And also, this

25  hearing is being conducted by videoconference

26  between Soledad State Prison and the San Diego

27  County District Attorney's Office, and it is being

4

1    done by videoconference, pursuant to Penal Code

2    Sections 3043.25.  The District Attorney is going

3    to appear by means of videoconferencing, which

4    means that his testimony and participation will be

5    by means of live audio and video transmission from

6    San Diego to our hearing room here at Soledad.

7    And simultaneously, the District Attorney in San

8    Diego will be receiving live audio and video

9    transmission from the facility here at Soledad.

10   And the hearing is going to be conducted as though

11   all parties are in the same room and following the

12   same rules and procedures that are followed at all

13   such Parole Consideration Hearings.  Now this

14   hearing is also being audio taped and the record

15   of the hearing will be a transcript of that

16   audiotape, pursuant to Penal Code Section 3042(b).

17   Okay.

18          INMATE REAMS:  Yes, Ma'am.

19          PRESIDING COMMISSIONER DALY:  Now we're

20   going to go around the room here and identify

21   everyone.  Carol Daly, D-A-L-Y, Commissioner,

22   Board of Prison Terms.

23          DEPUTY COMMISSIONER HARMON:  Robert Harmon,

24   H-A-R-M-O-N, Deputy Commissioner.

25          ATTORNEY TARDIFF:  Mary Ann Tardiff,

26   T-A-R-D-I, double F, Attorney for Mr. Reams.

27          INMATE REAMS:  Eugene Reams, R-E-A-M-S,

5

1    Charlie 90508.

2         PRESIDING COMMISSIONER DALY:  Okay, and let

3    the record reflect we have two correctional peace

4    officers in the room for security purposes only

5    and we'll now go to San Diego.

6         DEPUTY DISTRICT ATTORNEY SACHS:  Yes, it's

7    Richard Sachs, S-A-C-H-S, Deputy District

8    Attorney, San Diego County.

9         PRESIDING COMMISSIONER DALY:  Okay,

10   Mr. Reams, in front of you is an ADA Statement on

11   the table.  Could you read that out loud into the

12   record, please?

13        INMATE REAMS:  The Americans with

14   Disabilities Act, ADA, is a law to help people

15   with disabilities.  Disabilities are problems that

16   make it harder for some people to see, hear,

17   breathe, talk, walk, learn, think, work or take

18   care of themselves than it is for others.  Nobody

19   can be kept out of the public places or activities

20   because of a disability.  If you have a

21   disability, you have a right to ask for help to

22   get ready for your BPT Hearing, get to the

23   hearing, talk, read forms and papers and

24   understand the hearing process.  BPT will look at

25   what you asked for to make sure that you have a

26   disability that is covered by the ADA, and that

27   you have asked for the right kind of help.  If you

6

1   do not get help or if you don't think you got the

2   kind of help you need, ask for a BPT Form 1074

3   Grievance Form.  You can also get help to fill it

4   out.

5           PRESIDING COMMISSIONER DALY:  Okay,

6   Mr. Reams, do you understand what the Americans

7   with Disabilities Act is all about?

8           INMATE REAMS:  Yes, Ma'am.

9           PRESIDING COMMISSIONER DALY:  Okay, and you

10  signed BPT Form 1073 on June 2nd of '04; almost a

11  year ago.  And that was a form asking you if you

12  had a disability as defined under ADA, and you

13  indicated that you did not have.  Is that a true

14  statement?

15          INMATE REAMS:  Yes, Ma'am.

16          PRESIDING COMMISSIONER DALY:  Okay, and

17  since June of '04 and the current date, has there

18  been any change in your medical status?

19          INMATE REAMS:  No, Ma'am.

20          PRESIDING COMMISSIONER DALY:  Okay, so let

21  me ask you some questions.  Do you have any

22  difficulties walking up and down stairs or for

23  distances of more than 100 yards?

24          INMATE REAMS:  No, Ma'am.

25          PRESIDING COMMISSIONER DALY:  And do you

26  wear glasses at all?

27          INMATE REAMS:  No, Ma'am.

7

1          PRESIDING COMMISSIONER DALY:  Okay, so you

2     were able to read today without your glasses.  Do

3     you have any hearing impairments?

4          INMATE REAMS:  No, Ma'am.

5          PRESIDING COMMISSIONER DALY:  Have you ever

6     been included in a Triple CMS or EOP Program since

7     you've been in prison?

8          INMATE REAMS:  No, Ma'am.

9          PRESIDING COMMISSIONER DALY:  And you know

10    what those programs are?

11         INMATE REAMS:  I am --

12         PRESIDING COMMISSIONER DALY:  They're the

13    Mental Health Programs.

14         INMATE REAMS:  Yes.

15         PRESIDING COMMISSIONER DALY:  All right, and

16    have you ever been prescribed any psychotropic

17    medication either in prison or on the streets?

18         INMATE REAMS:  No, Ma'am.

19         PRESIDING COMMISSIONER DALY:  Okay, and how

20    far did you get in school before coming to prison?

21         INMATE REAMS:  Graduated.

22         PRESIDING COMMISSIONER DALY:  And did you,

23    when you were going to school, did you have to

24    take any special education classes?

25         INMATE REAMS:  No, Ma'am.

26         PRESIDING COMMISSIONER DALY:  All right, and

27    sir, do you suffer from any disability that would

8

1    prevent you from going forward with this hearing

2    today?

3         INMATE REAMS:   No, Ma'am, I do not.

4         PRESIDING COMMISSIONER DALY:   Okay, this

5    hearing is being conducted pursuant to Penal Code

6    Sections 3041, 3042, and the rules and regulations

7    of the Board of Prison Terms governing Parole

8    Consideration Hearings for life inmates.   Now the

9    purpose of today's hearing is to once again

10   consider your suitability for parole.   In doing

11   so, we will consider the number and the nature of

12   the crimes that you were committed for.   We're

13   going to look at your prior criminal history, your

14   social history as well as your behavior and your

15   programming since your commitment to prison.   We

16   have had an opportunity to review your Central

17   File.   Your prior transcripts are available here.

18   I've just read a couple of them.   And you will be

19   given an opportunity to correct or clarify the

20   record.   Now we will consider your progress since

21   your last hearing, your psychological report and

22   any other information that has a bearing on your

23   suitability for parole.   And if there are any

24   change in parole plans, it needs to be brought to

25   our attention.   Now we will reach a decision today

26   and inform you whether we find you suitable for

27   parole or not and the reasons for our decision.

9

1    And if you are found suitable for parole, the

2    length of your confinement will be explained to

3    you.  Now before we recess for deliberations

4    today, the District Attorney, your attorney and

5    then you will be given an opportunity to make a

6    statement regarding your parole suitability.  Your

7    statement will be limited to why you feel you are

8    suitable for parole at this time.  The California

9    Code of Regulations or actually then after that,

10   then we're going to recess, clear the room and do

11   our deliberations.  And then once we have arrived

12   at a decision, we will resume the hearing and

13   announce that decision.  Now the California Code

14   of Regulations state that regardless of the amount

15   of time served, a life inmate shall be found

16   unsuitable for and denied parole if in the

17   judgment of the Panel, releasing the prisoner

18   would pose an unreasonable risk of danger to

19   society.  Now you have certain rights and those

20   rights include the right to a timely notice of

21   this hearing, the right to review your Central

22   File and the right to present relevant documents.

23   Counsel, do you feel your client's rights have

24   been met thus far regarding this hearing?

25          **ATTORNEY TARDIFF:**  I do.

26          **PRESIDING COMMISSIONER DALY:**  And you have

27   an additional right to be heard by an impartial