# EXHIBIT 8
# Part 5 of 5

1          In claim 8, petitioner argues that the failure to find him suitable for parole violated

2    the Equal Protection Clause.  Petitioner argues that other prisoners convicted of kidnaping and

3    more serious offenses who received life sentences have been released on parole.  On June 2,

4    2003, the court granted petitioner's request to expand the record to include a list of prisoners who

5    were granted parole during several periods of time.  Supplemental Exhibit A, February 12, 2003,

6    motion for discovery and to expand the record.

7          According to this document, in 2001 the BPT found 59 inmates suitable for parole

8    including 10 prisoners convicted of first degree murder, 28 prisoners convicted of second degree

9    murder and 13 prisoners convicted of kidnaping.  In 2000, the BPT found 26 inmates suitable for

10   parole including 16 prisoners convicted of second degree murder and 9 prisoners convicted of

11   kidnaping.  In 1999, the BPT found 13 inmates suitable for parole including 9 convicted of

12   second degree murder and 2 convicted of kidnaping.

13         On June 12, 2003, petitioner filed another motion to expand the record and for

14   reconsideration of the June 2, 2003, order.  Petitioner moves to expand the record to include an

15   exhibit which the court previously found to be not authenticated.  Petitioner's current Exhibit A

16   is his proposed authenticated version of his previous Exhibit A attached to his February 3, 2003

17   motion (docket #19), which the court found was not properly authenticated.[3]  Petitioner has now

18   submitted the exhibit with a declaration of Barbara Fargo, Deputy Public Defender, who declares

19   that a Mr. Sessa, the Public Information Officer and Legislative Representative for the Board of

20   Prison Terms, provided her with the lists by e-mail, which copies are attached to her declaration.

21   Because there is no declaration by the person in the position to state that the data is what the

22   proponent claims, Mr. Sessa, petitioner's request is denied as to this exhibit.  Fed. R. Evid. 901.

23   \\\\\

24

---

25      [3]  On June 2, 2003, the court granted petitioner's request to expand the record to include

26   his *supplemental* exhibit A attached to the request, but denied his request to expand the record to include exhibit A.

1    Petitioner's Exhibit B attached to the instant motion is an updated version of his

2  previous Exhibit A, which was attached to his supplemental motion, filed February 12, 2003

3  (docket #20). That exhibit was found to be relevant by order of June 2, 2003, but only

4  marginally so. The current exhibit, by including inmates' names and parole suitability decisions

5  for the additional period from April 30, 2002 to September 30, 2002, does not render the exhibit

6  relevant. No value judgment can be made based on an inmate's conviction and a parole

7  determination in a particular case. Many factors go into the parole determination. The basis for

8  the conviction is only one of many considerations. Petitioner's request is denied as to this

9  exhibit.

10    Petitioner finally requests that the court reconsider its previous decision denying

11  discovery. Petitioner has submitted a copy of Governor Davis' executive report on parole review

12  decisions which contains case-by-case analyses of parole review decisions in individual cases.

13  Exhibit C. He has also included an indeterminate sentence parole release review in one case.

14  Exhibit D. Petitioner's equal protection claim cannot be proved by comparison to other prisoners

15  in this manner. For the same reasons given in response to petitioner's previous request for

16  discovery, his current request is denied.

17    Accordingly, the court now considers the merits of petitioner's Equal Protection

18  claim. "The Constitution permits qualitative differences in meting out punishments and there is

19  no requirement that two persons convicted of the same offense receive identical sentences."

20  Williams v. Illinois. 399 U.S. 235, 243, 90 S. Ct. 2018, 2023 (1970). Parole considerations

21  require only a rational relationship to legitimate state interests. McGinnis v. Royster, 410 U.S.

22  263, 270, 93 S. Ct. 1055, 1059-60 (1973).

23    In order to prevail on this claim, petitioner must demonstrate that similarly

24  situated prisoners have been released on parole sooner than him. See McQueary v. Blodgett, 924

25  F.2d 829, 835 (9th Cir. 1991). In other words, petitioner must demonstrate that prisoners

26  convicted of two counts of kidnaping for robbery based on similar circumstances have been

21

1  released on parole. Petitioner has not done this. As stated in the June 2, 2003, order denying

2  petitioner's request for discovery regarding this claim, given the variety of parole suitability

3  criteria to be utilized for someone who is serving a non-murder life term, every decision

4  concerning parole suitability is necessarily performed on a case-by-case basis.[4] No two prisoners

5  will have the same factors considered; indeed, in most cases some factors will be non-existent

6  and in others those same factors might be dispositively present. While the evidence submitted by

7  petitioner indicates that prisoners convicted of kidnaping and murder have been released on

8  parole, petitioner has not demonstrated that other prisoners with records substantially similar to

9  his own have been granted parole.

10              An equal protection argument based on petitioner's race, ethnicity, sex, religion,

11  etc. may well be sustainable if a decision had been made on one of those prohibited criteria.

12  However, a decision on the merits of parole eligibility should be reviewed, if at all, under the due

13  process rubric, and not on a comparison of crimes and criminals. No meaningful standards can

14  be developed, i.e., kidnaping is "better" than murder, petitioner's kidnaping was "worse" than

15  another, petitioner is "more rehabilitated" than another. Rather, relief must be based on the facts

16  of petitioner's own case—was there "some evidence" to support the denial of parole? The

17  undersigned has determined that there was not. Nothing is gained by attempting impossibly

18  standardless comparisons in addition to that finding. Accordingly, this claim is without merit.

19  \\\\\

20  _____

21  [4] Criteria include the severity of the offense and risk to society if the prisoner is released.
   Factors in this equation would include review of a prisoner's psychological condition, or a

22  "failure to demonstrate evidence of substantial change for the better." Cal. Code Regs. tit. 15, §
   2316. In fixing a parole date, one would consider the extent of the victim's injury, psychological

23  harm caused, sophistication of the crime, etc. Cal. Code Regs. tit. 15, § 2317. If murder lifers
   are added to the discussion, the potential divergence in parole considerations is even more

24  striking. In general, one is never found suitable for parole if his release would be deemed to pose
   an unreasonable risk to society. In determining suitability, the parole commissioners review "all

25  relevant, reliable information which includes social history, past and present mental state, past
   criminal history, the base and other commitment offenses, past and present attitude towards the

26  crime, conditions of treatment and control if released, and any other information which bears on
   the prisoner's suitability for release. Cal. Code Regs. tit. 15, § 2402.

1      In claim 11, petitioner argues that he has a constitutional right to a non-biased fact

2  finder on appeal.  Petitioner claims that the two BPT commissioners who responded to his

3  administrative appeal of the findings of the 1999 panel also participated in parole consideration

4  hearings and are under instructions not to give parole dates to prisoners.

5      In denying this claim the Superior Court stated,

6      In any event, even if other commissioners, who did not decide his initial denial
       but do sit on initial panels at parole hearing, decided his appeal, petitioner fails to
7      show that this is improper in any way.  In sitting on an appeal, a commissioner is
       sitting in a different capacity than the commissioner does at an initial parole
8      hearing, just as a superior court judge who sits on an appellate panel in the
       appellate department of the superior court may also hear cases at the superior
9      court level without involving any impropriety.  Similarly, superior court judges
       may be specially assigned to sit on a case in the Court of Appeal, and still
10     continue to hear other cases in the capacity as a superior court judge.  It is only
       when the person sits on both the initial decision and the appeal in the same case
11     that any issue of impropriety is raised.

12 Answer, Exhibit E, p. 11.

13     For the reasons stated by the Superior Court, this court finds this claim to be

14 without merit.  Simply because the commissioners who denied petitioner's appeal also sit on

15 initial panels at parole hearings does not make them biased in considering petitioner's appeal.

16 Petitioner's claim that these commissioners are under instructions not to give parole dates is

17 speculative and unsupported.  This claim is without merit.

18     In claim 10, petitioner argues that he did not receive a new parole hearing within

19 12 months, as ordered by the May 1999 panel.  On June 20, 2003, the court ordered the parties to

20 inform the court whether petitioner had received a parole suitability hearing following the 1999

21 hearing.  On June 30, 2003, petitioner and respondent filed responses to this order.  According to

22 both parties, petitioner had another suitability hearing in November 2000.

23     The April 1999 decision finding petitioner unsuitable for parole became final on

24 May 12, 1999.  Respondent's Answer, Exhibit C, p. 89.  Therefore, the November 2000

25 suitability hearing occurred approximately six months late.  However, petitioner has not

26 demonstrated that he suffered any prejudice as a result of this delay.  Cf. Vargas v. U.S. Parole

1 | Com'n, 865 F.2d 191, 194 (9th Cir. 1988) (due process violation occurs when delay in parole

2 | revocation hearing is unreasonable and prejudicial). Accordingly, this claim is without merit.

3 | For the reasons discussed above, the court finds that the denial of the claims

4 | discussed in this section by the California Supreme Court was not an unreasonable application of

5 | clearly established Supreme Court authority. Accordingly, these claims should be denied.

6 | Accordingly, IT IS HEREBY ORDERED that petitioner's June 12, 2003, motion

7 | for expansion of the record and reconsideration of the court's June 2, 2003, order is denied;

8 | IT IS HEREBY RECOMMENDED that petitioner's application for a writ of

9 | habeas corpus be granted as to petitioner's due process claim that there was not sufficient

10 | evidence to support the 1999 decision finding him unsuitable for parole; petitioner be given a

11 | parole date within thirty days of adoption of these findings and recommendations, assuming his

12 | record remains substantially unchanged from the time of the 1999 hearing; the petition be denied

13 | in all other respects.

14 | These findings and recommendations are submitted to the United States District

15 | Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty

16 | days after being served with these findings and recommendations, any party may file written

17 | objections with the court and serve a copy on all parties. Such a document should be captioned

18 | "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

19 | shall be served and filed within ten days after service of the objections. The parties are advised

20 | that failure to file objections within the specified time may waive the right to appeal the District

21 | Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

22 | DATED:  August 20, 2003.

23 |

24 |

25 | GREGORY G. HOLLOWS
    | UNITED STATES MAGISTRATE JUDGE

26 | yellen.157

24

EXHIBIT D

F I L E D

APR 0 5 2006

By: NORMA I MUUIINO, Deputy

1
2
3
4
5
6
7
8

THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF SAN DIEGO

9
10
11

IN THE MATTER OF THE APPLICATION OF:   )    HC 17095 – 2nd Petition

12                                            )    CR 66202

13    EUGENE ALVIN REAMS,                  )

14                                            )    ORDER DENYING PETITION FOR

15                    Petitioner.         )    WRIT OF HABEAS CORPUS

                                               )
16                                                )

17      AFTER REVIEWING THE PETITION FOR WRIT OF HABEAS CORPUS AND THE

18 COURT FILE IN THE ABOVE-REFERENCED MATTER, THE COURT FINDS AS FOLLOWS:

19      In 1984, Petitioner was convicted of multiple counts of kidnapping for the purpose of

20 robbery, robbery, assault with a deadly weapon, and auto theft. Petitioner had two accomplices and

21 the crimes were perpetrated with the use of loaded firearms. Petitioner was sentenced to two

22 concurrent indeterminate terms of 7 years to life, and a determinate term of 7 years, 8 months.

23      On July 17, 2002, Petitioner filed his first petition for writ of habeas corpus in this Court,

24 challenging the Board of Prison Term's ("BPT") June 26, 2001 decision to deny parole. This

25 petition was denied on August 6, 2002.

26      Petitioner filed the instant second petition for writ of habeas corpus in this Court on February

27 15, 2006, challenging the May 13, 2005 decision of the California Board of Parole Hearings ("BPH"

28 or "Board") finding him unsuitable for parole. Petitioner argues the Board's decision to deny parole

1 || was arbitrary and capricious because it was not supported by any evidence. Petitioner also argues

2 || the Board violated his rights by basing its denial of parole on the commitment offense.

3 ||      The Petition is denied for the following reasons.

4 ||      Every petitioner must set forth a *prima facie* statement of facts which would entitle him to

5 || habeas corpus relief under existing law. (*In re Bower* (1985) 38 Cal.3d 865, 872.) Vague or

6 || conclusory allegations do not warrant habeas relief. (*People v. Duvall* (1995) 9 Cal.4th 464, 474.)

7 || The petitioner bears the burden of proving the facts upon which he bases his claim for relief. (*In re*

8 || *Riddle* (1962) 57 Cal.2d 848, 852.) The petition should include copies of reasonably available

9 || documentary evidence in support of claims, including pertinent portions of hearing transcripts and

10 || affidavits or declarations.   (*People v. Duvall, supra,* 9 Cal.4th at 474.)    A petitioner's

11 || unsubstantiated, self-serving statements do not provide a sufficient basis upon which to prove his

12 || claims. (*In re Alvernaz* (1992) 2 Cal.4th 924, 945.)

13 ||      Petitioner has not met this burden.

14 ||      Overview of parole suitability standards:

15 ||      By statute, when determining suitability for parole, the parole board "shall normally set a

16 || parole release date" (Pen. Code § 3041(a)) "unless it determines that the gravity of the current

17 || convicted offense or offenses, or the timing and gravity of a current or past convicted offense or

18 || offenses, is such that consideration of the public safety requires a more lengthy period of

19 || incarceration for this individual" (Pen. Code § 3041(b)). The state Legislature has given the Board

20 || of Prison Terms ("BPT") the power to establish the rules and regulations regarding release on parole.

21 || (Pen. Code § 3052.) The BPT regulations require a panel determining parole suitability for a life

22 || prisoner to find the prisoner unsuitable for parole if, in the judgment of the panel, the prisoner will

23 || pose an unreasonable risk of danger to society if released from prison.   (California Code of

24 || Regulations, Title 15 [hereafter 15 C.C.R.] §§ 2281(a), 2402(a).)  The BPT should consider all

25 || relevant, reliable information available to it, including the prisoner's social history, past and present

26 || mental state, criminal history, commitment offenses, behavior before, during and after the crime,

27 || attitudes toward the crime, and any other information that bears on the prisoner's suitability for

28 || release. (15 C.C.R. §§ 2281(b), 2402(b).)

The BPT has also set forth general factors that tend to show suitability and unsuitability for parole. (15 C.C.R. §§ 2281(c)-(d), 2402(c)-(d).) The following are the factors tending to show *unsuitability* for parole that the parole board should consider:

> (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
> (C) The victim was abused, defiled or mutilated during or after the offense.
> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
> (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
> (3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.
> (4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.
> (5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.
> (6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

(15 C.C.R. § 2402(c).) The following are the factors tending to show *suitability* for parole that the parole board should consider:

> (1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.
> (2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.
> (3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.
> (4) Motivation for Crime. The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.
> (5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.
> (6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.
> (7) Age. The prisoner's present age reduces the probability of recidivism.
> (8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.
> (9) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.

(15 C.C.R. § 2402(d)).

The precise manner in which these specified factors are considered and balanced lies within the broad discretion of the BPT, but any decision to deny parole cannot be arbitrary or capricious. (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 656-657, 677 (*Rosenkrantz*).) Thus, the standard is that a life prisoner such as Petitioner should be granted parole unless the BPT finds, in the exercise of its broad discretion, the prisoner is unsuitable for parole in light of the circumstances specified by statute and by regulation.    (See *Rosenkrantz, supra,* 29 Cal.4th at 654-655.)    The overriding factor in determining whether a prisoner is suitable for parole is public safety. (Pen. Code § 3041; 15 C.C.R. § 2402(a); *In re Dannenberg* (2005) 34 Cal.4th 1061, 1084 (*Dannenberg*); *In re Scott* (2005) 133 Cal.App.4th 573, 591 (*Scott*).)

Judicial review of the BPH's decision, whether a prisoner is suitable for parole is limited to a determination of whether the factual basis for the decision is supported by some evidence in the record presented to the parole board that has some indicia of reliability. (*Rosenkrantz, supra,* 29 Cal.4th at 667; *Scott, supra,* 133 Cal.App.4th at 590-591.) This standard of review requires only a "modicum of evidence." (*Rosenkrantz, supra,* 29 Cal.4th at 677.) It is within the BPH's discretion to decide how to resolve conflicts in the evidence and to decide how much weight to give each factor. (*Id.* at 656, 677.) "It is irrelevant that a court might determine that evidence in the record tending to establish suitability for parole far outweighs evidence demonstrating unsuitability for parole." (*Id.* at 677.) As long as the BPH's decision reflects individualized consideration of the specified criteria and legal standards, and is not arbitrary or capricious, the court's review is limited to ascertaining whether there is some evidence in the record that supports the decision. (*Id.*)

**Petitioner's claims on habeas corpus:**

Petitioner argues he was deprived of his constitutionally protected liberty interest in parole because there is no evidence to support the Board's decision denying him parole and because the Board's decision was based solely on the commitment offense. These claims are without merit.

The federal courts indeed have found the language of Penal Code § 3041 creates a liberty interest in release on parole, which is protected by the procedural safeguards of the due process clause. (*Biggs v. Terhune* (9th Cir. 2003) 334 F.3d 610, 614; *McQuillion v. Duncan* (9th Cir. 2002) 306 F.3d. 895, 902-903; see also, *Rosenkrantz, supra,* 29 Cal.4th at 653.) However, the California

1   Supreme Court has recently found that whether a prisoner is suitable for parole trumps the prisoner's

2   expectancy of a set parole date. (*Dannenberg, supra,* 34 Cal.4th at 1070-1071 ["The statutory

3   scheme, viewed as a whole, thus clearly elevates a life prisoner's individual suitability for parole

4   above the inmate's expectancy in early setting of a fixed and "uniform" parole date."]) Thus, there is

5   no violation of a prisoner's liberty interest if the parole board properly denied parole.

6       A decision to deny parole can be based on the nature of the prisoner's underlying offense

7   alone, as long as the parole board has given due consideration to all applicable factors regarding

8   suitability for parole (*Rosenkrantz, supra,* 29 Cal.4th at 677, 682-683; see also, *Scott, supra,* 133

9   Cal.App.4th at 594-595), and the circumstances of the commitment offense reasonably could be

10  considered more aggravated or more violent than the minimum necessary to sustain a conviction for

11  that offense (*Rosenkrantz, supra,* 29 Cal.4th at pp. 678, 683; see also, *Dannenberg, supra,* 34 Cal.4th

12  at 1098.)

13      The parole board in this case did not rely solely on Petitioner's commitment offense in

14  denying him parole. The BPH gave due consideration to all the applicable factors regarding

15  suitability for parole as set forth in 15 C.C.R. §2402(c), (d). First, the BPH considered the

16  underlying commitment offense. Petitioner was involved in a crime spree that resulted in multiple

17  car thefts, robberies, and assaults, totaling 27 counts, and involving 19 victims. (Petition, Exh. A at

18  72:5-9). The Board found that multiple victims were attacked, and that the offenses were committed

19  in an especially cruel and callous manner (15 C.C.R. §2402(c)(1); Petition, Exh. A at 71:17-22).

20  There were 19 victims who were attacked, and 14 of these victims were bound and gagged. The

21  offense was carried out in a dispassionate and calculated manner in that these crimes were pre-

22  planned. (15 C.C.R. §2402(c)(1)(B); Exh. A at 71:22-72:1). The motive for the crimes was very

23  trivial in relation to the offenses in that the offenses were committed strictly for material gains. (15

24  C.C.R. §2402(c)(1)(E); Exh. A at 72:2-4).

25      The Board also considered Petitioner's previous criminal record and social history. (15

26  C.C.R. §2402(c)(2), (3)). Petitioner has a minimal criminal history, and a stable social history.

27  (Petitioner, Exh. A at 72:11-22).

28

The Board also considered Petitioner's institutional behavior. (15 C.C.R. §2402(c)(6)). The Board noted Petitioner had received two 115's since being incarcerated, the last in 1997. (Petition, Exh. A at 72:22-24). The BPH also noted Petitioner has programmed in a steady manner while incarcerated, and commended Petitioner on his participation in work assignments and vocational and self-help programs. (Exh. A at 73:9-74:4).

The Board also considered psychological factors. (15 C.C.R. §2402(c)(5)). The BPH reviewed Petitioner's psychological report from July 15, 2004, and found it to be supportive of parole. (Petition, Exh. A at 72:25-73:2).

The Board next considered Petitioner's parole plans. (15 C.C.R. §2402(d)(8)). The BPH noted Petitioner petitioner's plans appeared to be in order and that he had support from his family. (Petition, Exh. A at 73:2-4).

The Board also reviewed the 3042 Notice responses, which indicate an opposition to a finding of parole suitability, specifically from the San Diego District Attorney's Office. (Petition, Exh. A at 73:4-9).

After weighing the above factors, the BPH determined the positive aspects did not outweigh the unsuitability for parole, and denied parole for one year. The Board stated:

> It was really my intent to come in here today and to go through absolutely every one of the crimes and talk with them about – talk with you about them. And you cut me off. . . . You said you didn't want to talk about them. You'd talked about them. Everything you had to say has been said. (Petition, Exh. A at 74:11-19). . . .

> And so I just have to tell you that when a Panel is ready to give you a date, in order to send it forward to Decision Review and then for it to go to the Governor's Office, we have to show that the crime was thoroughly discussed and acknowledged and that we have a good understanding of your acceptance of responsibility and how you feel about it and consideration given to the impact on the victims and everything. And I, quite frankly, didn't feel I had a chance to do that today. (Petition, Exh. A at 75:10-20).

The Board also recommended to Petitioner that he make a list of all of his self-help classes and vocational classes and assignments, as well as create a resume, so that he could be prepared to present it to the next Panel at his next hearing. (Petition, Exh. A at 75:21-76:12).

Based on the above, there is "some evidence" in the record to support the Board's finding that Petitioner is unsuitable for parole. This Court finds no abuse of the Board's discretion is apparent in this case.

Therefore, the petition for writ of habeas corpus is DENIED, in its entirety.

A copy of this order shall be served upon 1) Petitioner; and 2) the Office of the San Diego County District Attorney (Appellate Division).

IT IS SO ORDERED.

DATED: _April 5, 2006_

_Robert F. O'Neill_
ROBERT F. O'NEILL
JUDGE OF THE SUPERIOR COURT

I hereby certify that the foregoing instrument is a
full, true & correct copy of the original on file in
this office, that said document has not been revoked,
annulled or set aside, and it is in full force and effect.

Attest: _APR 5 2006 @ 4PM_
Clerk of the Superior Court of the State
of California, in and for the County of San Diego

By _W_ _____ Deputy

EXHIBIT E

1  Eugene Alvin Reams, C-90508
   P.O. Box 689 / C-307U
2  Soledad, CA. 93960-0689

3  Petitioner In Pro Per

4

5

6

7

8                    SUPERIOR COURT OF CALIFORNIA

9                       COUNTY OF SAN DIEGO

10

11  Eugene Alvin Reams,                )   Case No. HC17095
                                       )
12      Petitioner,                    )   MOTION FOR RECONSIDERATION
                                       )   OF DENIAL OF HABEAS CORPUS
13          vs.                        )   PETITION.  REQUEST FOR
                                       )   ADJUDICATION AND/OR DECISION/
14  Kane, Warden - Soledad State Prison )   RESPONSE TO ALL CLAIMS
                                       )   PRESENTED TO THE COURT.
15      Respondent.                    )

16      Petitioner, herein files said Motion, based on the ORDER, dated

17  April 5, 2006 (Attached as Exhibit A).  Petitioner requests this Court

18  reconsider its ORDER denying Petitioner's habeas corpus petition, and,

19  respond to and/or adjudicate all claims presented, as set forth herein

20  and in habeas petition.

21  A.  **Equal Protection Violation**

22      Petitioner's second claim, (Habeas Corpus Petition [hereinafter

23  HCP] page 12) was not addressed in this Court's ORDER.  Petitioner

24  alleges that it is a violation of State and Federal Constitutional Equal

25  Protection Rights to use the commitment offense for denial, when his

26  two codefendants have been found suitable for the same crime.

27      This case is a <u>classic</u> example of an Equal Protection violation.

28  Three people conspired to commit crimes totalling 27 felony counts.

                              - 1 -

1  Each received nearly the same sentence, with only two years separating

2  their sentences.  Refer to HCP, page 7, section titled "Sentence."  The

3  Board of Parole Hearings [hereinafer BPH] is treating Petitioner

4  differently than his codefendants.  Mike Yellen and Harold Taylor

5  (codefendants) have been found suitable by the BPH.  Refer to HCP,

6  Exhibits B and C.

7     Now comes Petitioner, who has been denied parole (**seven times**)

8  based <u>mainly</u> on the commitment offense.  The Board concluded:

9
      "... that the prisoner is not yet suitable for parole and
10     would pose an unreasonable risk of danger to society or a
       threat to public safety if released from prison.  The
11     offenses were carried out with a great amount of callous
       disregard for what the victims were going through.  There
12     were about 19 victims who were attacked.  There were 27
       counts of offenses.  And 14 of the victims were bound and
13     gagged.  These crimes were carried out in a very
       calculated manner in that they were all pre-planned.  And
14     the victims were abused by being bound and gagged and the
       offenses were carried out in a manner that showed total
15     disregard for the fear of the victims at the time.  The
       motive for the crimes were very trivial in relation to
16     the offense in that these were strictly for material
       gains and selfish reasons."  (HCP, Exhibit A, p. 71, ln
17     14 through p. 72, ln 4.)

18     The reason quoted (above) apply to all three defendants.  The Equal

19  Protection clause under the U.S. Constitution, Fourteenth Amendment,

20  forbids the state to treat one group, including group of prison inmates

21  arbitrarily worse than another.  <u>Anderson v. Romero</u>, (7th Cir. 1995) 72

22  F.3d 518.  The U.S. Supreme Court has established a "class of one" in

23  the case of <u>Village of Willowbrook v. Olech</u>, (2000) 528 U.S. 562, 145

24  L.Ed 2d 1060, 120 S.Ct. 1073, at pp. 1074-1075; "We granted certiorari

25  to determine whether the Equal Protection Clause gives rise to the

26  cause of action on behalf of a "class of one" where the plaintiff did

27  not allege membership in a class or group." (527 U.S. 1067, 120 S.Ct.

28  10, 144 L.Ed. 2d 841 (1999); "Whether the complaint alleges a class of

- 2 -

1  one or a class of five is of no consequence because we concluded that
2  the number of individuals in a class is immaterial for the equal
3  protection analysis."

4      "Our cases have recognized successful equal protection claims
5  brought by a "class of one," where the plaintiff alleges that she has
6  been intentionally treated differently from others similarly situated.
7  Sioux City Bridge Co. v. Dakota County, (1923) 260 U.S. 441, 43 S.Ct.
8  190, 67 L.Ed. 340.

9      The equal protection clause also extends to prison inmates.  Rouse
10  v. Benson, (1999) 193 F.3d 936.

11      Petitioner asserts that the board violated his Equal Protection
12  Rights by not treating Petitioner the same as his codefendants, of
13  which, Petitioner is similarly situated.

14  B.  **Erroneous Application of Dannenberg**

15      This Court's ORDER stated, "However, The California Supreme Court
16  has recently found that whether a prisoner is suitable for parole trumps
17  the prisoner's expectancy of a set parole date.  (Dannenberg, supra, 34
18  Cal.4th at 1070-1071 ["The statuatory scheme, viewed as a whole, thus
19  clearly elevates a life prisoner's individual suitability for parole
20  above the inmate's expectancy in early setting of a fixed and "uniform"
21  parole date."])  Thus, there is no violation of a prisoner's liberty
22  interest if the parole board properly denied parole."  (ORDER, Exhibit
23  A, p. 4-5).

24      This statement in Dannenberg does not apply!  Petitioner is **not**
25  seeking (expectancy of) an **early** setting of a fixed and "uniform" parole
26  date.  Petitioner has exceeded his maximum term.  Petitioner's life
27  sentence began August of 1989.  His matrix term is 9-11-13 year(s) [CCR,
28  Title 15, Section § 2282 (c)], thus establishing a minimum term of

- 3 -

1    August of 1996, and a maximum "uniform" term of August of 2002 (without
2    applying any good time credits).

3        Furthermore, when Dannenberg is viewed in its entirety, the Supreme
4    Court further explains, "Of course, even if sentenced to a life-maximum
5    term, no prisoner can be held for a period grossly disproportionate to
6    his or her individual culpability for the commitment offense. Such
7    excessive confinement, we have held, violates the cruel or unusual
8    punishment clause (art. I, § 17) of the California Constitution.
9    (Rodriguez, supra, 14 Cal.3d 639, 646-656; Wingo, supra, 14 Cal.3d 169,
10   175-183.) Thus, we acknowledge, section 3041, subdivision (b) cannot
11   authorize such an inmate's retention, **even for reasons of public safety,**
12   beyond this constitutional maximum period of confinement." [Emphasis
13   added] (Refer to 23 Cal.Rptr.3d 417, at page 441.)

14       The California Supreme Court acknowledges that Penal Code §3041 (b)
15   cannot authorize an inmate's retention, **even for reasons of public**
16   **safety,** beyond this constitutional maximum period of confinement.
17   Petitioner has established that his maximum term was August of 2002,
18   thereby violating the mandate in Dannenberg.

19       In addition, Petitioner's individual culpability for the commitment
20   offense has become grossly disproportionate. Harold Taylor's
21   (codefendant) calculation sheet (HCP, Exhibit B) established Taylor's
22   term was set at 12 years [144 months] thereby placing him within one
23   year of his maximum date. Sincer he was five years beyond his
24   calculated date, he was therefore four years beyond him maximum release
25   date. Dannenberg expressy states it is a violation of the Constitution
26   to deny parole when an inmate has exceeded his maximum term, which
27   Petitioner surpassed four years ago.

28       Petitioner made the argument of excessive confinement [exceeding

- 4 -

1 maximum term] but did not specifically allege a cruel or unusual

2 punishment violation under Article I, §17, of the California

3 Constitution. Petitioner now request this court consider this

4 violation, in light of the recent Dannenberg decision.

5 C. **Due Process Violation**

6      A due process violation has occurred in this case. Petitioner's

7 commitment offense factors are indistinguishable from codefendant Mike

8 Yellen's commitment offense factors. Yellen raised this same claim, and

9 was also denied by the State Courts. In Yellen's case, the United

10 States Eastern District Court stated,

11      "More important to the undersigned in assessing any
due process violation is the fact that continuous reliance
12 on unchanging circumstances transforms an offense for
which California law provides eligibility for parole into
13 a de facto life imprisonment without the possibility of
parole. The court asks rhetorically -- what is it about
14 the circumstances of petitioner's crime or motivation
which is going to change? The answer is nothing. The
15 circumstances of the crimes will always be what they were,
and petitioner's motive for committing them will always be
16 trivial. Petitioner has no hope for ever obtaining parole
except perhaps that a panel in the future will arbitrarily
17 hold that the circumstances were not that serious or the
motive was more than trivial. Given that no one seriously
18 contends a lack of seriousness or lack of triviality at
the present time, the potential for parole in this case is
19 remote to the point of non-existence. Petitioner's
liberty interest should not be determined by such an
20 arbitrary, remote possibility.
     In the instant case, the BPT has apparently relied on
21 these unchanging factors at least three times, and
probably more assuming petitioner's exemplary record has
22 remained unchanged, in finding petitioner unsuitable for
parole. Petitioner has "continue[d] to demonstrate
23 exemplary behavior and evidence of rehabilitation." 334
F.3d at 916. Under these circumstances, the continued
24 reliance on these factors at the 1999 hearing **violated due
process.**"[Emphasis added] (HCP, Exhibit C, p. 12, ln 12
25 to p. 13, ln 5.)

26      Petitioner request reconsideration of a due process violation, in

27 light of the Federal Eastern District Court's decision. Further

28 exacerbating this due process violation is that Yellen was appealing

1 | his **third** parole hearing, whereas, Petitioner is challenging his **seventh**
2 | parole hearing.  Petitioner's sentence is disproportionate, compared to
3 | his codefendants, further establishing a United States Constitution,
4 | 14th Amendment, equal protection violation.

5 | D.  **Violation of Penal Code § 5011 (b) and CCR, Title 15, § 2236**

6 | The board stated that when the panel is ready to give Petitioner a
7 | date, they have to show that the crime was thoroughly discussed and
8 | acknowledged and that the panel has a good understanding of Petitioner's
9 | acceptance of responsibility. (HCP, Exhibit A at 75, 10-20)

10 | This Court chose to use this passage to support the Boards finding
11 | of unsuitability.  (ORDER, Exhibit A, p. 6, ln 17-20).

12 | Petitioner chose, at his seventh hearing, to invoke his right (Penal
13 | Code § 5011 (b), and CCR, Title 15, § 2236) and not discuss the crime.
14 | The panel had before them all previous transcripts (prior six hearings.)
15 | in which Petitioner had fully discussed the crime and his participation.
16 | The Board panel stated, "... do you just prefer not to talk about it at
17 | this point?" (HCP, Exhibit A, p. 16, ln 1-2)  Petitioner responded; "If
18 | you have anything that's discrepancy or anything that's in question, I'd
19 | be more than happy to clarify it for you." (HCP, Exhibit A, p. 16, ln
20 | 3-5)  Petitioner had discussed his case with the previous six board
21 | panels, all resulting in denials.

22 | The Board violates their own regulations, and the Penal Code by
23 | stating that a crime **must** be thoroughly discussed and **acknowledged** to
24 | receive a date.

25 | Petitioner respectfully request this court to reconsider the use of
26 | this passage in their denial, as it violation, and further request the
27 | court order a new hearing, wherein the Board **cannot** withhold a release
28 | date on the basis of an inmate's refusal to discuss the crime.

- 6 -

1  E.  CCR, Title 15, § 2402

2      This section does not apply to Petitioner.  Section 2402 falls under

3  Article 11, "Parole Consideration Criteria and Guidelines for Murders

4  Committed on or After November 8, 1978, and specified Attempted First

5  Degree Murders Committed on or After January 1, 1987."  Petitioner falls

6  under Article 5, "Parole Consideration Criteria and Guidelines for Life

7  Prisoners."

8      This honorable Court exceeded its jurisdiction by unconstitutionally

9  applying CCR, Title 15, §2402.  This section was used throughout this

10  Court's ORDER (ORDER, p. 2-6).  Petitioner request reconsideration and

11  only applicable section(s) be applied to Petitioner.

12  F.  Boilerplate Findings

13      This Court's ORDER stated, ".. and that the offenses were committed

14  in an especially cruel and callous manner ... The offense was carried

15  out in a dispassionate and calculated manner in that these crimes were

16  preplanned."  (ORDER, p. 5, ln 18-22)

17      A recent case, In re Shaputis, no. D046356, California Court of

18  Appeal, Fourth District, First Division, December 28, 2005, held that

19  the board's boilerplate findings characterizing the crime as

20  "exceptionally callous disregard for human suffering," and/or committed

21  in a "dispassionate and calculated manner" were unsupported by any

22  evidence.  The court relied to a large extent on the reasoning in In re

23  Smith, (2003) 14 Cal.App.4th 343, and In re Scott (2004) 119 Cal.App.4th

24  871, 884, with Scott stating:

25      "[T]here is no evidence Shaputis "tormented, terrorized,
       or injured [his victim] before deciding to shoot [her]; or
26      that he gratuitously increased or unnecessarily prolonged
       her pain and suffering ... Was the crime callous?  Yes.
27      However, are the facts of the crime some evidence that
       [Shaputis] acted with exceptionally callous disregard for
28      [the victim's] suffering; or do the facts distinguish this
       crime from other second degree

                                    - 7 -

1    crime from other second degree murders as exceptionally
2    callous? No." [Citation.] (id. at p. 367).

3    Petitioner's offense, while callous, cannot be evidence he acted
4    with exceptionally callous disregard for the victim's suffering.  The
5    offense involved 14 victims being bound and gagged, but none of the
6    victim(s) were injured, much less murdered. A robbery, where the
7    victim(s) were uninjured, does not elevate this offense to an
8    exceptionally callous disregard for the victim(s) suffering.

9    The board's attempt to support their boilerplate findings involved
10   facts which occurred 22 years ago.  These facts provide no predictive
11   value that Petitioner now meets the criteria of Penal Code § 3041 (b),
12   he is currently an unreasonable danger or threat to society. The Court
13   of Appeals, in Shaputis, found the evidence the board relied on was a
14   historical relic, and was so lacking of any medical, psychological or
15   behavioral evidentiary support, that it was arbitrary and capricious
16   within the deferential standards articulated by Rosenkrantz, 29 Cal.4th
17   616.  The California's First, Second and Fourth District Courts of
18   Appeal have now published cases involving the board's policy of denying
19   parole based on rote generalizations and boilerplate findings.
20   Petitioner respectfully request the Court to reconsider their ORDER in
21   regards to the board's rote generalizations and boilerplate findings.

22   G.  Psychological Report

23   The board requires that every lifer be reviewed by a State Licensed
24   psychologist/psychiatrist.  The purpose of this review is to disclose
25   any mental conditions and to provide a current threat assessment.

26   Correctional counselors, at one time, also provided current threat
27   assessments in the Life Prisoner Evaluation Report (LPER).  This
28   practice was discontinued as a result of two cases (In re Cortez and In

- 8 -

1  re Aremu [Citations omitted]) which found counselors were not authorized
2  by the D.O.M. (Department Operations Manual) nor did they have the
3  TRAINING.

4      The board panel found Petitioner to be an unreasonable risk of
5  danger or threat to public safety (within the meaning of Penal Code
6  § 3041 (b).  Petitioner assert that no where in the record does it
7  establish the BPH panel has the any credentials or authority to make
8  threat assessments.

9      The only professional authorized to make a threat assessment is the
10 State Licensed Psychologist.  This professionally licensed assessment
11 cannot be dismissed by laymen, who then make their own finding.  This
12 practice is arbitrary and capricious, and violates Petitioner's State
13 and Federal due process rights.  There is absolutely no Penal Codes or
14 CCR, Title 15 regulations which authorize the BPH panel to over-ride
15 a professional State Licensed psychological report.  Here, the BPH
16 exceeded their jurisdiction.

17     Petitioner request this Court to reconsider this due process
18 violation.

                              CONCLUSION

20     At the time of Petitioner's offense, he was the youngest (18 years
21 old) of the three defendants.  During the trial, the District Attorney
22 characterized Yellen as the mastermind, Taylor and Reams as his
23 flunkies.  Both codefendants, Yellen and Taylor, have been released on
24 parole in 2004.  The BPH panel's main reason for denial was the
25 commitment offense, which overwhelmingly appears to be a clear violation
26 of the State and Federal Equal Protection Clause.

27     Petitioner provided this court with Yellen's Federal eastern
28 District Court's ruling (HCP, Exhibit C) which established a due process

                              - 9 -

violation occurred as a result of denial of parole based on unchanging
factors.  This Court ignored this issue even though it is such a relevant
case, i.e., codefendant with the same unchanging factors.  Petitioner
request this honorable Court to reconsider their findings, or alternatively
modify its decision so as to provide guidance to Petitioner in terms
of how to proceed in future litigation regarding parole consideration.

For the reason stated in Petitioner's writ of habeas corpus and this
Motion for Reconsideration, and in the interest of justice, Petitioner
request this Court review the overwhelming evidence establishing
Petitioner's rights have been violated.

Petitioner herein incorporates all filings, exhibits, orders and
exhibits as though set forth in full in this Motion for Reconsideration.

PRAYER

WHEREFORE, Petitioner prays this Court to do the following:

1.  Grant Petitioner's Motion for Reconsideration.

2.  Issue an Order to Show Cause compelling Respondent to
    answer all claims set forth herein by Petitioner.

3.  Grant any other relief this Court may deem fair and just.


Date:  May 15, 2006                          Respectfully submitted,



                                             *Eugene Alvin Reams*
                                             Eugene Alvin Reams

                                             Petitioner in Pro Per

1  violation occurred as a result of denial of parole based on unchanging

2  factors.  This Court ignored this issue even though it is such a relevant

3  case, i.e., codefendant with the same unchanging factors.  Petitioner

4  request this Court reconsider their findings, and explain how such a

5  relevant case does not apply to Petitioner.

6      For all reasons stated in Petitioner's writ of habeas corpus and this

7  Motion for Reconsideration, and in the interest of justice, Petitioner

8  request this Court review the overewhelming evidence establishing

9  Petitioner's rights have been violated.

10      Petitioner herein incorporates all filings, exhibits, orders and

11  exhibits as though set forth in full in this Motion for Reconsideration.

12  PRAYER

13  WHEREFORE, Petitioner prays this Court to do the following;

14     1.  Grant Petitioner's Motion for Reconsideration.

15     2.  Issue an Order to Show Cause compelling Respondent to
16         answer all claims set forth herein by Petitioner.

17     3.  Grant any other relief this Court may deem fair and just.

18

19  Dated: April 25, 2006              Respectfully Sumitted,

20

21  *Eugene Alvin Reams*
                                   Eugene Alvin Reams

22                                    Petitioner in Pro Per

23

24

25

26

27

28

**EXHIBIT F**

F I L E D

~~Clerk of the Superior~~ Court

JUN 0 7 2006

By: NORMA TAQUINO, Deputy

1

2

3

4

5

6

7

8    **THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**
     **IN AND FOR THE COUNTY OF SAN DIEGO**

9

10

11   IN THE MATTER OF THE APPLICATION OF:    )    HC 17095
                                            )
12   EUGENE ALLVIN REAMS,                   )    ORDER DENYING MOTION FOR
                                            )    RECONSIDERATION OF ORDER
13                                          )    DENYING SECOND PETITION FOR
                        Petitioner.         )    WRIT OF HABEAS CORPUS
14   _____)

15       AFTER REVIEWING THE MOTION FOR RECONSIDERATION OF THE ORDER

16   DENYING PETITIONER'S SECOND PETITION FOR WRIT OF HABEAS CORPUS AND

17   THE COURT FILES IN THE ABOVE-CAPTIONED MATTER, THE COURT FINDS AS

18   FOLLOWS:

19       In 1984, Petitioner was convicted of multiple counts of kidnapping for the purpose of

20   robbery, robbery, assault with a deadly weapon, and auto theft. Petitioner had two accomplices

21   and the crimes were perpetrated with the use of loaded firearms. Petitioner was sentenced to

22   two concurrent indeterminate terms of 7 years to life, and a determinate term of 7 years, 8

23   months.

24       On February 15, 2006, Petitioner filed his Second Petition for Writ of Habeas Corpus in

25   this Court, challenging the May 13, 2005 decision of the California Board of Parole Hearings

26   ("BPH" or "Board") finding him unsuitable for parole. This Court denied the Petition on April

27   5, 2006.

28

-1-

Petitioner filed the instant motion for reconsideration of the denial of his petition on May 30, 2006. In his motion, Petitioner requests this Court reconsider its order denying the petition, and respond to Petitioner's second claim, in which Petitioner alleged it is a violation of his Equal Protection rights to use the commitment offense for denial, when his two co-defendants have been found suitable for parole, based on the same crime.

The motion for reconsideration is denied for the following reasons.

"Because no appeal lies from the denial of a petition for writ of habeas corpus, a prisoner whose petition has been denied by the superior court can obtain review of his claims only by the filing of a new petition in the Court of Appeal [Citations Omitted]." (*In Re Clark* (1993) 5 Cal.4th 750, 767 fn.7).

Additionally, when a petition for writ of habeas corpus has once been denied, the policy of this court is to deny new applications for relief unless there has been a change in the existing facts or the law. (See *In re Lynch* (1972) 8 Cal.3d 410, 439, fn. 26; *In re Clark* (1993) 5 Cal.4th 750, 769.) Here, the facts and law relied upon by Petitioner in both his petition and motion for reconsideration did not demonstrate he is entitled to habeas corpus relief under existing law. Accordingly, denial of his petition was proper.

As discussed in the order denying Petitioner's second petition for writ of habeas corpus, the BPH evaluates each prisoner individually with respect to his suitability for release on parole. When determining suitability for parole, the parole board "shall normally set a parole release date" (Pen. Code § 3041(a)) "unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of a current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual" (Pen. Code § 3041(b)). The state Legislature has given the Board of Prison Terms ("BPT") the power to establish the rules and regulations regarding release on parole. (Pen. Code § 3052.) The BPT regulations require a panel determining parole suitability for a life prisoner to find the prisoner unsuitable for parole if, in the judgment of the panel, the prisoner will pose an unreasonable risk of danger to society if released from prison. (California Code of Regulations, Title 15 [hereafter 15 C.C.R.] §§ 2281(a), 2402(a).) The BPT should consider all relevant, reliable information available to it, including the prisoner's social history,

past and present mental state, criminal history, commitment offenses, behavior before, during and after the crime, attitudes toward the crime, and any other information that bears on the prisoner's suitability for release. (15 C.C.R. §§ 2281(b), 2402(b).) The BPT has also set forth general factors that tend to show suitability and unsuitability for parole. (15 C.C.R. §§ 2281(c)-(d), 2402(c)-(d).) Because suitability for release on parole is based on an evaluation of how the factors apply to each prisoner, individually, Petitioner's argument that two of his co-defendants were granted parole, is not a violation of his equal protection rights.

For each of the foregoing reasons, Petitioner's motion for reconsideration of the denial of his habeas corpus petition is denied.

A copy of this order shall be served on (1) Petitioner and (2) the San Diego Office of the District Attorney (Appellate Division).

IT IS SO ORDERED.

DATED: _June 7, 2006_

_Robert F. O'Neill_
ROBERT F. O'NEILL
JUDGE OF THE SUPERIOR COURT

I hereby certify that the foregoing instrument is a full, true & correct copy of the original on file in this office, that said document has not been revoked, annulled or set aside, and it is in full force and effect.
JUN 0 5 2006 @ 4:00pm
Attest: _____
Clerk of the Superior Court of the State of California, in and for the County of San Diego
By___AT_____Deputy

-3-

## PROOF OF SERVICE BY MAIL
### BY PERSON IN STATE CUSTODY
(C.C.P. §§ 1013(A), 2015,5)

I, _Eugene Alvin Reams_, declare:

I am over 18 years of age and I am party to this action. I am a resident of CORRECTIONAL TRAINING FACILITY prison, in the County of Monterrey, State of California. My prison address is:

_E. Reams_, CDCR #: _C-90508_
CORRECTIONAL TRAINING FACILITY
P.O. BOX 689, CELL #: _C-307U_
SOLEDAD, CA 93960-0689.

On _August 28, 2006_, I served the attached:

_Writ of Habeas Corpus_

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope (verified by prison staff), with postage thereon fully paid, in the United States Mail in a deposit box so provided at the above-named institution in which I am presently confined. The envelope was addressed as follows:

_Department of Justice, Attorney General_
_110 West A Street, Suite 1100_
_P.O. Box 85266_
_San Diego, CA 92186-5266_

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on _August 28, 2006_.

_Eugene Alvin Reams_
_____
Declarant